Sep. 8. 2010 10:52AM    JAMES J STOUT PC                    No. 5236    P. 2

RECEIVED AND FILED

10 SEP -9  AM 10: 33

JACKSON COUNTY COURTS
DOCKETED BY:_____

IN THE CIRCUIT COURT OF THE STATE OF OREGON FOR THE COUNTY OF JACKSON

| | |
|---|---|
| IVAN HOOKER AND KATHERINE HOOKER, | ) ) Case No.: 104576 *E 3* |
| Plaintiffs, | ) ) COMPLAINT |
| vs. | ) ) DECLARATORY JUDGMENT ) ORS CHAPTER 28 |
| NORTHWEST TRUSTEE SERVICES, INC.; BANK OF AMERICA, NA; | ) ) WRONGFUL FORECLOSURE ) ORS Chapter 86 |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. | ) ) PRELIMINARY INJUNCTION ) |
| Defendants. | ) Not Subject to Mandatory Arbitration ) ) |

Plaintiffs allege as follows:

1.

Plaintiffs are residents of Jackson County, Oregon. Northwest Trustee Services, Inc. (Northwest) is a foreign business corporation registered to do business in the state of Oregon. The remaining defendants are entities that are not registered to do business in the state of Oregon.

2.

On or about November 17, 2005, plaintiffs obtained a loan in the amount of $260,000 from GN Mortgage, LLC (GN). GN is listed as the lender on the promissory note and the deed of trust. The deed of trust securing the note was

Page 1 of 5 COMPLAINT - WRONGFUL FORECLOSURE

JAMES J. STOUT, P.C.
Attorney at Law
419 South Oakdale Avenue
Medford, OR 97501
Phone: (541) 618-8888
Fax: (541) 618-9015
jjstout1@aol.com

Exhibit 1
Page 1 of 37

1   recorded on November 23, 2005, as document #2005-071547, in the official records

2   of Jackson County, Oregon. The trust deed and the promissory notes are attached

3   hereto as Exhibit 1, and by this reference incorporated herein. Mortgage Electronic

4   Registration Systems, Inc. (MERS) is listed as the grantee and beneficiary under

5   the deed of trust, but is not listed on the promissory notes.

6                                          3,

7        Due to economic forces beyond their control, plaintiffs became delinquent in

8   the payments under the note. Around September of 2009, plaintiffs could no longer

9   make the payment. Plaintiffs attempted to modify their loan, but were unable to.

10                                         4.

11       In May, 2010, MERS assigned the deed of trust to Bank of America, this was

12  recorded as document #2010-014400, in the official records of Jackson County,

13  Oregon, and is attached hereto as Exhibit 2, and by this reference incorporated

14  herein. After MERS assigned all of its right, title and interest in the deed of trust, it

15  appointed Northwest Trustee Services, Inc. (Northwest) as successor trustee. The

16  appointment was recorded as document #2010-014401, in the official records of

17  Jackson County, Oregon, and is attached hereto as Exhibit 3, and by this reference

18  incorporated herein. Northwest then prepared the notice of default and election to

19  sell, which was recorded as document #2010-014402, in the official records of

20  Jackson County, Oregon, and is attached hereto as Exhibit 4, and by this reference

21  incorporated herein. All of this happened on May 3, 2010. The only other

22  documents that have been recorded are the affidavits of mailing and compliance,

23  which are not relevant to this proceeding.

24

25  Page 2 of 5 COMPLAINT - WRONGFUL FORECLOSURE

JAMES J. STOUT, P.C.
Attorney at Law
419 South Oakdale Avenue
Medford, OR 97501
Phone: (541) 618-8888
Fax: (541) 618-9015
jjstout1@aol.com

Exhibit 1
Page 2 of 37

5.

The foreclosure is unlawful in the following particulars:

A. MERS has no authority/right to assign the trust deed. MERS operates a record-keeping database and at all times was operating in the state of Oregon without registering as a foreign corporation.  MERS was specifically set up to avoid compliance with Oregon's recording laws in order to avoid paying recording fees to the County recorder's office on the thousands of transfers of mortgages and notes it has allegedly facilitated within the state of Oregon.  MERS never had any actual interest in the loan.  MERS did not loan any money to the plaintiff and does not receive any payments from the plaintiff.   The trust deed was not given for MERS' benefit and the listing of MERS as a beneficiary under the trust deed is a sham.  As such, no lien was perfected on the note, because the direct beneficiary of the security interest has, and had, absolutely no debt owed to it by plaintiff - ever. Since MERS was not the owner of the underlying note, MERS could not transfer the note or the beneficial interest in the trust deed.  Therefore, the assignment to Bank of America was ineffective and/or void.  As such, Bank of America has no authority to foreclose.

B. The assignment from MERS to Bank of America was a legally nullity. MERS is not listed as a lender on the promissory note and therefore had no authority to assign the note.  Assuming that MERS did assign the trust deed to Bank of America, MERS could not have assigned the promissory note to Bank of America, as MERS had no right, title or interest in the promissory note. It is a long-established legal principle, that assigning the trust deed without assigning the underlying note, is a legal nullity.  <u>Schleef v. Purdy</u>, 107 OR 71, (1923); <u>Futrell v.</u>

JAMES J. STOUT, P.C.
Attorney at Law
419 South Oakdale Avenue
Medford, OR  97501
Phone: (541) 618-8888
Fax: (541) 618-9015
jjstout1@aol.com

Exhibit 1
Page 3 of 37



1  Wagner; 96 Or App 27 (1988); Flyer v. Sullivan, 264 A.D. 697 (1954); Hill V. Favour,

2  84 P.2d 575 (1938); US v. Hoffman, 826 P.2d 340 (1992).  As such, Bank of

3  America either became an unsecured creditor, with absolutely no right to foreclose,

4  or if the assignment was ineffective, then Bank of America had no authority to

5  appoint Northwest as successor trustee and Northwest had no authority to issue the

6  notice of default and notice of sale.

7      C. Since MERS is not licensed to do business in the state of Oregon, any

8  actions it took in his foreclosure or ultra vires and should be deemed void.

9      D. The appointment of Northwest was unlawful and therefore Northwest had

10  no authority to issue the notice of default and notice of sale or to foreclose as

11  successor trustee.  MERS transferred all of its rights, title and interest, whatever

12  that may have been, to Bank of America prior to appointing a successor trustee.

13  MERS had no authority or right to appoint a successor trustee, after it had

14  transferred all of its rights to Bank of America.  Since the appointment was unlawful,

15  Northwest had no authority to issue the notice of default and notice of sale or to

16  foreclose as successor trustee.

17                  6.

18      The court should issue a declaratory judgment declaring that the foreclosure

19  is unlawful as set forth above and enjoining the defendants from foreclosing the

20  trust deed (Exhibit 1), until they comply with ORS chapter 86 and have the right and

21  authority to foreclose.

22                  7.

23      Pursuant to the promissory note and trust deed, plaintiffs are entitled to their

24  reasonable attorneys fees incurred herein.

25  Page 4 of 5 COMPLAINT - WRONGFUL FORECLOSURE

JAMES J. STOUT, P.C.
Attorney at Law
419 South Oakdale Avenue
Medford, OR  97501
Phone: (541) 618-8888
Fax:  (541) 618-9015
jjstout1@aol.com

Exhibit 1
Page 4 of 37

1

2  WHEREFORE, plaintiffs pray as follows:

3      1. A declaration from the court, declaring that the foreclosure is wrongful.

4      2. Entering a preliminary injunction against the defendants, preventing the

5  defendants from foreclosing the trust deed, until they comply with ORS Chapter 86

6  and have the legal authority and right to foreclose the trust deed.

7      3. Plaintiffs costs, disbursements and reasonable attorney's fees incurred

8  herein.

9      4. Any other relief the court deems equable and just

10

11

12

13  Tuesday, September 07, 2010

14  **JAMES J. STOUT, P.C.**

15

16  James J. Stout
    OSB No. 93473
17  Attorney for Plaintiffs

18

19

20

21

22

23

24

25  Page 5 of 5 COMPLAINT - WRONGFUL FORECLOSURE

**JAMES J. STOUT, P.C.**
Attorney at Law
419 South Oakdale Avenue
Medford, OR 97501
Phone: (541) 618-8888
Fax: (541) 618-9015
jjstout1@aol.com

Exhibit 1
Page 5 of 37

Sep. 8. 2010 10:52AM    JAMES J STOLT PC    No. 5236    P. 7



Until a change is requested all tax statements shall be sent to the following address.

Guaranty Bank, F.S.B.
4000 West Brown Deer Road
Brown Deer, WI  53209

WHEN RECORDED MAIL TO

Guaranty Bank, F.S.B.
P.O. Box 245022
Milwaukee, WI  53224 Attn: Doc
Control Dept.

TAX ACCOUNT NUMBER
1-077152-2

True and Actual Consideration is:
$ 260,000.00

Jackson County Official Records    **2005-071547**
R-TD
Cnt=1  Stn=6  HELMANCD  11/23/2005 02:00:00 PM
$100.00 $6.00 $11.00    Total:$116.00

I, Kathleen S. Beckett, County Clerk for Jackson County, Oregon, certify that the instrument identified herein was recorded in the Clerk records.

Kathleen S. Beckett - County Clerk

FA - 70823450

——————— [Space Above This Line For Recording Data] ———————

# DEED OF TRUST

Mortgage Electronic Registration Systems, Inc. (MERS) is the Grantee of this Security Instrument
MIN 100016500005491617

100
5
11

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated November 17, 2005 ,
together with all Riders to this document.

(B) "Borrower" is Ivan E. Hooker, Katherine J. Hooker

Borrower is the trustor under this Security Instrument.

(C) "Lender" is GN Mortgage, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Wisconsin
Lender's address is 6950 SW Hampton, #200, Tigard, OR 97223

(D) "Trustee" is Regional. Trustee Services Corp.

10923613
OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

10923613
Form 3038 1/01

-6A(OR) (0406).01
Page 1 of 15    Initials: _IEH_
                         _KJH_
VMP Mortgage Solutions, Inc. (800)521-7291



EXHIBIT
1

Exhibit 1
Page 6 of 37



(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **November 17, 2005**
The Note states that Borrower owes Lender **Two Hundred Sixty Thousand  And Zero/100**
                                                                                                                    **Dollars**

(U.S. $ **260,000.00**           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  **December 01, 2035**

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

10923613

-6A(OR) (0406).01           Page 2 of 15                           Initials: _____           10923613           Form 3038  1/01

Exhibit 1
Page 7 of 37

Sep. 8. 2010 10:53AM     JAMES J STOLT PC                        No. 5236    P. 9

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

               County           of                Jackson          :

      [Type of Recording Jurisdiction]                  [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED.

 

which currently has the address of

1380 Daisy Creek Road                               [Street]
Jacksonville             [City] , Oregon 97530     [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

10923613                                              10923613

-6A(OR) (0408).01             Page 3 of 15        Initials:         Form 3038   1/01

 

3

Exhibit 1
Page 8 of 37



BORROWER COVENANTS that Borrower 's lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community

10923613

10923613

-6A(OR) (0401).01    Page 4 of 15    Initials: ___    Form 3038  1/01

KAH

Exhibit 1
Page 9 of 37



Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

10923613                                                                                          10923613

-6A(OR) (0405).01                    Page 9 of 15               Initials:                     Form 3038  1/01

5

Exhibit 1
Page 10 of 37

 
lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

10923613

-6A(OR) (0406).01    Page 6 of 15    Initials: __    Form 3038  1/01

10923613

Exhibit 1
Page 11 of 37




the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

10923613                                                                    10923613

-6A(OR) (0408).01                    Page 7 of 15                    Initials _____    Form 3038  1/01

Exhibit 1
Page 12 of 37



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

10923613                                                               10923613

-6A(OR) (0405).01                    Page 8 of 15              Initials: _____    Form 3038  1/01

Exhibit 1
Page 13 of 37



(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value; unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

10923613                                                              10923613

-6A(OR) (0409).01                        Page 8 of 15                        Form 3038   1/01

K.S.H

q

Exhibit 1
Page 14 of 37



to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

    13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

    Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

    14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

    If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

    15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

10923613                                                          10923613

-6A(OR) (0408).01                      Page 10 of 16         Initials: I.B.N.    Form 3038    1/01
                                                                     KJW

Sep. 8. 2010 10:55AM    JAMES J STOLT PC     No. 5236    P. 17

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

10923613                                                                    10923613

-6A(OR) (0401).01                    Page 11 of 15          Initials STStl    Form 3038  1/01
                                                                  KAH

11

Exhibit 1
Page 16 of 37



requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

10923613                                                    10923613

-6A(OR) (0406).01                    Page 12 of 15          Form 3038   1/01

Initials _____
KAH

Exhibit 1
Page 17 of 37



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

**26. Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

**27. Required Evidence of Property Insurance.**

### WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

10923613

10923613

-6A(OR) (0409).01

Page 12 of 15

K.J.H

Form 3038 1/01

13

Exhibit 1
Page 18 of 37

 

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                        Ivan B. Hooker               -Borrower

_____          _____ (Seal)
                                        Katharine J. Hooker          -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                    -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                    -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                    -Borrower

10923613                               10923613

-6A(OR) (0408).01           Page 14 of 15       Form 3038   1/01

14

Exhibit 1
Page 19 of 37



**STATE OF OREGON,**   *Jackson*   **County ss:**
   On this **17** day of **November 2005** , personally appeared the above named
Ivan E. Hooker, ~~Katherine J. Hooker~~

and acknowledged the foregoing instrument to be his/her/their voluntary act and deed.

My Commission Expires: **10·7·07**

(Official Seal)                          Before me:

                                         *Debbie Henley*
                                         Notary Public for Oregon

> OFFICIAL SEAL
> DEBBIE HENLEY
> NOTARY PUBLIC-OREGON
> COMMISSION NO. 370374
> MY COMMISSION EXPIRES OCT. 07, 2007

---

**STATE OF OREGON,**
   County of _**Jackson**_                          } **ss.**

   On **Nov. 18, 2005** before me personally appeared
**Katherine J. Hooker**
whose identity was established to my satisfaction, and who executed the foregoing instrument, acknowledging to me that the same was
executed freely and voluntarily.

   IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal on the date first written above.

> OFFICIAL SEAL
> DEBBIE HENLEY
> NOTARY PUBLIC-OREGON
> COMMISSION NO. 370374
> MY COMMISSION EXPIRES OCT. 07, 2007

                                         *Debbie Henley*
                                         Notary Public for Oregon
                                         My commission expires **10·7·07**

NO PART OF ANY STEVENS-NESS FORM MAY BE REPRODUCED IN ANY FORM OR BY ANY ELECTRONIC OR MECHANICAL MEANS.

FORM No. 23 – ACKNOWLEDGMENT, INDIVIDUAL.   6A          © 1993-2001 STEVENS-NESS LAW PUBLISHING CO., PORTLAND, OR   www.stevensness.com

15

Exhibit 1
Page 20 of 37



# FIXED/ADJUSTABLE RATE RIDER
### (One-Year Treasury Index - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this 17th day of November, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to GN Mortgage, LLC

("Lender") of the same date and covering the property described in the Security Instrument and located at:

1380 Daisy Creek Road
Jacksonville, OR 97530
[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial fixed interest rate of                6.000 %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of December, 2010 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

10923613                                                            10923613
**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - ONE-YEAR TREASURY INDEX** - Single Family - Fannie Mae Uniform Instrument
Form 3182 1/01
-843R (0406)
Page 1 of 4        Initials: _____
VMP Mortgage Solutions, Inc.
(800)521-7291

16

Exhibit 1
Page 21 of 37



If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and three quarters                                                                        percentage points
(                2.750  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.000 % or less than                2.750  %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than                11.000 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.  Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

10923613                                                                                                10923613

Initials: _TDd_
_Khel_

843R (0406)                                            Page 2 of 4                                    Form 3182 1/01

17

Exhibit 1
Page 22 of 37



However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

10923613                                                                        10923613

-843R (0405)                    Page 3 of 4                Initials: [illegible]          Form 3182 1/01

18

Exhibit 1
Page 23 of 37

Sep. 8. 2010 10:56AM     JAMES J STOUT PC        No. 5236    P. 25

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
Ivan E. Hooker                -Borrower

_____ (Seal)
Katherine J. Hooker        -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

10923613                                    10923613

-843R (0405)          Page 4 of 4          Form 3182 1/01

19

Exhibit 1
Page 24 of 37

 

**EXHIBIT A**

LEGAL DESCRIPTION:

Commencing at the Quarter corner common to Sections 5 and 6 in Township 38 South, Range 2 West of the Williamette Meridian, Jackson County, Oregon; run thence along the section line common to Sections 5 and 6, same Township and Range, North 0° 01' 30" West, 415.49 feet to the true point of beginning; thence continue along section line North 00° 01' 30" West 354.40 feet; thence East 35 feet, more or less, to the Westerly right of way line of Daisy Creek Road; thence in a Southerly direction along said Westerly right of way line, 355 feet, more or less, to the South boundary of the tract of land described in Volume 381, Page 359, Jackson County, Oregon, Deed Records; thence West, along said South boundary, 50 feet, more or less, to the true point of beginning.

Exhibit 1
Page 25 of 37

 

# InterestFirst<sup>SM</sup>ADJUSTABLE RATE NOTE
### (One-Year Treasury Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

November 17, 2005                     Tigard                          OREGON
[Date]                                [City]                          [State]

1380 Daisy Creek Road
Jacksonville, OR 97530
[Property Address]

## 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $260,000.00                        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is GN Mortgage, LLC

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        6.000 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.    PAYMENTS

### (A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on January 01, 2006                . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on December 01, 2035                      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 245014, Milwaukee, WI 53224

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $1,300.01                        before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.
10923613

10923613

MULTISTATE InterestFirst ADJUSTABLE RATE NOTE - ONE-YEAR TREASURY INDEX - Single Family - Fannie Mae Uniform Instrument

VMP-171N (0210).02          Form 3631 11/01
VMP Mortgage Solutions, Inc. (800)521-7291
Page 1 of 8                    Initials: _____

Exhibit 1
Page 26 of 37



(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of December, 2010        , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and three quarters        percentage points (        2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than        11.000 % or less than        2.750 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than        11.000 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

10923613

10923613

Form 3531 11/01

Initials: _____

Exhibit 1

Sep. 8. 2010 10:57AM    JAMES J STOUT PC     No. 5236    P. 29

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  Fifteen    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

10923613

-171N (0210).02    Page 3 of 5

10923613
Form 3531 11/01Exhibit 1
Initials: ———— Page 28 of 37

Sep. 8. 2010 10:57AM     JAMES J STOUT PC     No. 5236   P. 30

(A)  Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

10923613

VMP-171N (0210).02

Page 4 of 5

10923613
Form 3531 11/Exhibit 1

Initial: _____ Page 29 of 37

Sep. 8. 2010 10:57AM     JAMES J STOLT PC       No. 5236     P. 31

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Ivan E. Hooker                     -Borrower

_____ (Seal)
Katherine J. Hooker               -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

*[Sign Original Only]*

10923613

VMP2-171N (0210) 02

10923613

Exhibit 1
Page 30 of 37

Form 3821 11/01

Sep. 8. 2010 10:57AM    JAMES J STOLT PC        No. 5236    P. 32

AFTER RECORDING RETURN TO:

NORTHWEST TRUSTEE SERVICES INC
ATTENTION: KATHY TAGGART
P.O. BOX 997
BELLEVUE, WA 98009-0997

Jackson County Official Records **2010-014400**
R-ATD
Stn=1 MORGANS6    05/07/2010 09:53:48 AM
$10.00 $10.00 $5.00 $11.00 $15.00    **$51.00**

I, Christine Walker, County Clerk for Jackson County, Oregon, certify
that the Instrument Identified herein was recorded in the Clerk records.

Christine Walker - County Clerk

## ASSIGNMENT OF DEED OF TRUST

ORIGINAL GRANTOR:  IVAN E. HOOKER AND KATHERINE J. HOOKER

BENEFICIARY:  BANK OF AMERICA NATIONAL ASSOCIATION

FILE NO. 7023.73090

LOAN# N/A

EXHIBIT

2

Exhibit 1
Page 31 of 37

 

After Recording Return to:
Northwest Trustee Services, Inc.
Attention: Kathy Taggart
P.O. Box 997
Bellevue, WA 98009-0997

---

7023.73090/HOOKER, IVAN E. and KATHERINE J.

### Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Bank of America, National Association, whose address is c/o Wells Fargo Bank, NA, 3476 STATEVIEW BLVD., MAC X7801-02T, FORT MILL, SC 29715, all beneficial interest under that certain deed of trust, dated 11/17/05, executed by IVAN E. HOOKER, KATHERINE J. HOOKER, Grantors, to Regional Trustee Services Corporation, Trustee, and recorded on 11/23/05, as 2005-071547, Records of JACKSON County, Oregon, describing land therein as:

COMMENCING AT THE QUARTER CORNER COMMON TO SECTIONS 5 AND 6 IN TOWNSHIP 38 SOUTH, RANGE 2 WEST OF THE WILLAMETTE MERIDIAN, JACKSON COUNTY, OREGON; RUN THENCE ALONG THE SECTION LINE COMMON TO SECTIONS 5 AND 6, SAME TOWNSHIP AND RANGE, NORTH 0 DEGREES 01' 30" WEST, 415.49 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUE ALONG SECTION LINE NORTH 00 DEGREES 01' 30" WEST 354.40 FEET; THENCE EAST 35 FEET, MORE OR LESS, TO THE WESTERLY RIGHT OF WAY LINE OF DAISY CREEK ROAD; THENCE IN A SOUTHERLY DIRECTION ALONG SAID WESTERLY RIGHT OF WAY LINE, 355 FEET, MORE OR LESS, TO THE SOUTH BOUNDARY OF THE TRACT OF LAND DESCRIBED IN VOLUME 381, PAGE 359, JACKSON COUNTY, OREGON, DEED RECORDS; THENCE WEST, ALONG SAID SOUTH BOUNDARY, 50 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: May 3, 2010

Mortgage Electronic Registration Systems, Inc.

Title    Vice President

State of Washington    )
                       ) ss.
County of King         )

This instrument was acknowledged before me on May 3, 2010 by Vonnie McElligott as Vice President of Mortgage Electronic Registration Systems, Inc.

Notary signature
My commission expires: 3-12-14

SARAH ELIZABETH STEINER
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
03-12-14

Exhibit 1
Page 32 of 37

Jackson County Official Records **2010-014401**
R-AT
Stn=1 MORGANSS          05/07/2010 09:53:48 AM
$10.00 $10.00 $5.00 $11.00 $15.00                    **$51.00**

I, Christine Walker, County Clerk for Jackson County, Oregon, certify
that the instrument identified herein was recorded in the Clerk records.

Christine Walker - County Clerk

**AFTER RECORDING RETURN TO:**

**NORTHWEST TRUSTEE SERVICES INC**
**ATTENTION: KATHY TAGGART**
**P.O. BOX 997**
**BELLEVUE, WA 98009-0997**

## APPOINTMENT OF SUCCESSOR TRUSTEE

**ORIGINAL GRANTOR:** IVAN E. HOOKER AND KATHERINE J. HOOKER

**BENEFICIARY:** MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
SOLELY AS NOMINEE FOR GN MORTGAGE, LLC

**FILE NO.** 7023.73090

**LOAN#** N/A

**EXHIBIT**
**3**

Exhibit 1
Page 33 of 37

neutral

 

## APPOINTMENT OF SUCCESSOR TRUSTEE

0148965262

KNOW ALL MEN BY THESE PRESENTS that IVAN E. HOOKER, KATHERINE J. HOOKER, as grantors, and Regional Trustee Services Corporation, as the trustee, and Mortgage Electronic Registration Systems, Inc. solely as nominee for GN MORTGAGE, LLC, is the beneficiary under that certain trust deed dated 11/17/05, and recorded 11/23/05, as 2005-071547 of the Mortgage Records of JACKSON County, Oregon. The undersigned, who is the present beneficiary under said trust deed desires to appoint a new trustee in the place and stead of the original trustee named above;

NOW THEREFORE, in view of the premises, the undersigned hereby appoints Northwest Trustee Services, Inc., whose address is P.O. Box 997, Bellevue, WA 98009-0997 as successor trustee under said trust deed, to have all the powers of said original trustee, effective immediately.

In construing this instrument, and whenever the context so requires, the singular includes the plural.

IN WITNESS WHEREOF, the undersigned beneficiary has executed this document. If the undersigned is a corporation, it has caused its name to be signed and its seal affixed by an officer or other person duly authorized to do so by its board of directors.

Mortgage Electronic Registration Systems, Inc.

By:

Title:    Vice President

State of Washington    )
                       ) ss.
County of King         )

This instrument was acknowledged before me on May 3, 2010 by Todd Hendricks as Vice President of Mortgage Electronic Registration Systems, Inc.

Notary signature
My commission expires: 3-12-14

SARAH ELIZABETH STEINER
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
03-12-14

APPOINTMENT OF SUCCESSOR TRUSTEE
Re: Trust Deed from
HOOKER, IVAN E. and KATHERINE J.
                   Grantor
            to
Northwest Trustee Services, Inc.
                   Trustee    File No. 7023.73090

After recording return to:
Kathy Taggart
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

Exhibit 1
Page 34 of 37

Sep. 8. 2010 10:57AM   JAMES J STOUT PC    No. 5236   P. 36

| Jackson County Official Records | **2010-014402** |
|---|---|
| R-ND | |
| Stn=1 MORGANSS | 06/07/2010 09:53:48 AM |
| $15.00 $10.00 $5.00 $11.00 $15.00 | $56.00 |

I, Christina Walker, County Clerk for Jackson County, Oregon, certify
that the instrument identified herein was recorded in the Clerk records.

Christine Walker - County Clerk

AFTER RECORDING RETURN TO:

NORTHWEST TRUSTEE SERVICES INC
ATTENTION: KATHY TAGGART
P.O. BOX 997
BELLEVUE, WA 98009-0997

## NOTICE OF DEFAULT AND ELECTION TO SELL

**ORIGINAL GRANTOR:** IVAN E. HOOKER AND KATHERINE J. HOOKER

**BENEFICIARY:** MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
SOLELY AS NOMINEE FOR GN MORTGAGE, LLC

FILE NO. 7023.73090

LOAN# N/A



EXHIBIT
4

Exhibit 1
Page 35 of 37



## NOTICE OF DEFAULT AND ELECTION TO SELL

Reference is made to that certain trust deed made by IVAN E. HOOKER, KATHERINE J. HOOKER, as grantors, to Regional Trustee Services Corporation, as trustee, in favor of Mortgage Electronic Registration Systems, Inc. solely as nominee for GN MORTGAGE, LLC, as beneficiary, dated 11/17/05, recorded 11/23/05, in the mortgage records of JACKSON County, Oregon, as 2005-071547, and subsequently assigned to Bank of America, National Association by Assignment, covering the following described real property situated in said county and state, to wit:

COMMENCING AT THE QUARTER CORNER COMMON TO SECTIONS 5 AND 6 IN TOWNSHIP 38 SOUTH, RANGE 2 WEST OF THE WILLAMETTE MERIDIAN, JACKSON COUNTY, OREGON; RUN THENCE ALONG THE SECTION LINE COMMON TO SECTIONS 5 AND 6, SAME TOWNSHIP AND RANGE, NORTH 0 DEGREES 01' 30" WEST, 415.49 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUE ALONG SECTION LINE NORTH 00 DEGREES 01' 30" WEST 354.40 FEET; THENCE EAST 35 FEET, MORE OR LESS, TO THE WESTERLY RIGHT OF WAY LINE OF DAISY CREEK ROAD; THENCE IN A SOUTHERLY DIRECTION ALONG SAID WESTERLY RIGHT OF WAY LINE, 355 FEET, MORE OR LESS, TO THE SOUTH BOUNDARY OF THE TRACT OF LAND DESCRIBED IN VOLUME 381, PAGE 359, JACKSON COUNTY, OREGON, DEED RECORDS; THENCE WEST, ALONG SAID SOUTH BOUNDARY, 50 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

PROPERTY ADDRESS:   1380 DAISY CREEK ROAD
                    JACKSONVILLE, OR 97530

There is a default by the grantor or other person owing an obligation or by their successor in interest, the performance of which is secured by said trust deed, or by their successor in interest, with respect to provisions therein which authorize sale in the event of default of such provision. The default for which foreclosure is made is grantors' failure to pay when due the following sums: monthly payments of $1,590.67 beginning 09/01/09; plus late charges of $64.95 each month beginning 09/16/09; plus prior accrued late charges of $0.00; excepting therefrom a credit of ($379.69); together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

By reason of said default, the beneficiary has declared all sums owing on the obligation secured by said trust deed immediately due and payable, said sums being the following, to wit: $259,800.86 with interest thereon at the rate of 6 percent per annum beginning 08/01/09; plus late charges of $64.95 each month beginning 09/16/09 until paid; plus prior accrued late charges of $0.00, excepting therefrom a credit of ($379.69); together with title expense, costs, trustee's fees and attorneys fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

---

| | |
|---|---|
| **NOTICE OF DEFAULT AND ELECTION TO SELL**<br><br>RE: Trust Deed from<br>HOOKER, IVAN E. and KATHERINE J.<br>    Grantor<br>      to<br>Northwest Trustee Services, Inc.,<br>    Successor Trustee    File No. 7023.73090 | For Additional Information:<br>After Recording return to:<br>Kathy Taggart<br>Northwest Trustee Services, Inc.<br>P.O. Box 997<br>Bellevue, WA 98009-0997<br>(425) 586-1900 |

Exhibit 1
Page 36 of 37



Notice is hereby given that the beneficiary and trustee, by reason of said default, have elected and do hereby elect to foreclose the trust deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the described property which the grantor had, or had the power to convey, at the time grantor executed the trust deed, together with any interest the grantor or grantor's successors in interest acquired after the execution of the trust deed, to satisfy the obligations secured by the trust deed and the expenses of the sale, including the compensations of the trustee as provided by law, and reasonable fees of trustee's attorneys.

The sale will be held at the hour of 10:00 o'clock A.M., in accord with the standard of time established by ORS 187.110 on September 10, 2010, at the following place: on the front steps outside the main entrance of the Jackson County Courthouse, 10 South Oakdale, in the City of Medford, County of JACKSON, State of Oregon, which is the hour, date and place last set for the sale.

Notice is further given that for reinstatement or payoff quotes requested pursuant to ORS 86.745 must be timely communicated in a written request that complies with that statute addressed to the trustee's "Urgent Request Desk" either by personal delivery to the trustee's physical offices (call for address) or by first class, certified mail, return receipt requested, addressed to the trustee's post office box address set forth in this notice. Due to potential conflicts with federal law, persons having no record legal or equitable interest in the subject property will only receive information concerning the lender's estimated or actual bid. Lender bid information is also available at the trustee's website, www.northwesttrustee.com.

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing every other default complained of herein by tendering the performance required under the obligation or trust deed, in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and trust deed, together with trustee's and attorney's fees not exceeding the amounts provided by said ORS 86.753. Requests from persons named in ORS 86.753 for reinstatement quotes received less than six days prior to the date set for the trustee's sale will be honored only at the discretion of the beneficiary or if required by the terms of the loan documents.

In construing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any.

The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference. You may also access sale status at www.northwesttrustee.com.

Northwest Trustee Services, Inc.-, Trustee
Northwest Trustee Services, Inc.

STATE OF WASHINGTON )
                     ) ss.
COUNTY OF KING       )

I certify that I know or have satisfactory evidence that Ken Palmer is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he/ was authorized to execute the instrument and acknowledged it as an Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: May 3, 2010

SARAH ELIZABETH STEINER
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
03-12-14

NOTARY PUBLIC in and for the State of
Washington, residing at Renton
My commission expires 3-12-14

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

Exhibit 1
Page 37 of 37