## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF OREGON –MEDFORD DIVISION

FILED '10 FEB 04 11:58USDC-ORM

| | |
|---|---|
| DON M. HOGAN and LINDA M. HOGAN; | Case No: 10-6028-HO |
| Plaintiff, | |
| v. | PLAINTIFF'S VERIFIED COMPLAINT FOR: |
| 1) NW TRUST SERVICES, INC.; | |
| 2) WESTERN TITLE AND ESCROW COMPANY; | |
| 3) HALLIGAN & ASSOCIATES, APPRAISER; | 1. DECLARATORY RELIEF |
| 4) THE LENDING TEAM, INC.; | 2. CONTRACTUAL BREACH |
| 5) HYPERION CAPITAL GROUP, LLC | 3. VIOLATION OF TILA |
| 6) WELLS FARGO AND COMPANY | 4. VIOLATION OF RESPA |
| 7) JOHN ROES 1-10, BEING UNDISCLOSED MORTGAGE AGGREGATORS (WHOLESALERS), MORTGAGE ORIGINATORS, LOAN SELLER, TRUSTEE OF POOLED ASSETS, TRUSTEE FOR HOLDERS OF CERTIFICATES OF COLLATERALIZED MORTGAGE OBLIGATIONS, MORGAN STANLEY, AS INVESTMENT BANKER, ET AL, INDIVIDUALLY, JOINTLY AND SEVERALLY; | 5. RECISSION |
| | 6. FRAUD |
| | 7. UDAP |
| | 8. BREACH OF FIDUCIARY DUTY |
| | 9. UNCONSCIONABILITY |
| | 10. UNCLEAN HANDS |
| | 11. CONVERSION |
| | 12. COUNTERFEITING |
| | 13. RICO |
| | 14. FDCPA |
| Defendant(s). | 15. WRONGFUL FORECLOSURE |

## INTRODUCTION

1.    COMES NOW the Plaintiffs DON M. HOGAN AND LINDA M. HOGAN (hereinafter referred to collectively as "Plaintiffs") alleging as follows:

# 1910

## PARTIES

2.    At all times relevant herein, Plaintiffs were over the age of eighteen and were a resident of 61553 Tall Tree Court, Bend OR 97702, County of Deschutes, State of Oregon (hereinafter referred to as "Subject Property").

3.    Plaintiffs are informed and believe and on that basis allege that at all pertinent times each of the Defendants was the agent of each of the remaining Defendants, and/or acted with their consent, ratification and authorization, and in doing the acts alleged herein, each of the Defendants acted in such capacity with respect to the remaining Defendants.

4.    Plaintiff is informed and therefore believes that Defendant NW TRUST SERVICES (hereinafter referred to as "NW"), a State of Washington entity, form unknown, is believed to be authorized to do business in the State of Oregon. NW was the deed of trust trustee in this transaction and has a business address of 3535 Factoria Blvd. SE, Suite 200, Bellevue, WA 98006.

5.    Plaintiffs entered into a putative loan repayment and security agreement on or about March 19, 2007 with Defendant HYPERION CAPITAL GROUP, LLC, hereinafter "HYPERION," by and through THE LENDING TEAM, (hereinafter referred to as "TLT").   The terms of the loan required Plaintiffs to repay a loan of $342,000 to HYPERION. The loan program consisted of a fixed rate interest only loan for 10 years followed by a fully amortizing loan for an additional 20 years. The loan was purportedly secured by the Subject Property.

6.    Plaintiffs are informed and therefore believe that Defendant HYPERION, a business entity, believed to be a limited liability company, authorized to do business in the State of Oregon. HYPERION is the original mortgage lender with business addresses of 5885 SW Meadows Road, Suite 850, Lake Oswego, OR 97035.

7.    Plaintiffs are informed and therefore believe that Defendant TLT, an Oregon corporation, form unknown, is a corporation, authorized to do business in the State of Oregon. TLT is the original mortgage broker with business addresses of 1600 Valley River Drive, Suite #100, Eugene, OR 97401.

Plaintiff's Verified Complaint – Page 2 of 29

8.    Plaintiffs are informed and therefore believes that Defendant WESTERN TITLE AND ECROW COMPANY, (hereinafter referred to as "WESTERN"), an Oregon entity, form unknown, is believed to be authorized to do business in the State of Oregon. WESTERN is the title company for the loan and has a business address of 360 SW Bond, Suite 100, Bend, OR 97702.

9.    Plaintiff is informed and therefore believes that Defendant HALLIGAN & ASSOCIATES, (hereinafter referred to as "HALLIGAN"), an Oregon entity, form unknown, is believed to be authorized to do business in the State of Oregon. HALLIGAN was the appraiser in this transaction and has a business address of 20354 Empire Ave., Suite D-3 Bend, OR 97701.

10.    Plaintiff is informed and therefore believes that Defendant WELLS FARGO AND COMPANY, (hereinafter referred to as "WELLS FARGO"), an entity, form unknown, is believed to be authorized to do business in the State of Oregon. WELLS FARGO was the successor lender in this transaction and has a business address of 2711 Centerville Road, Suite 400, Wilmington New Castle, DE 19808.

11.    The Defendants (each of them named in paragraphs 2 through 10 above, shall collectively be referred to as "DEFENDANTS") named herein "all persons unknown", claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint adverse to Plaintiff's title thereto and as DOES I through 50 (hereinafter referred to as "UNKNOWN DEFENDANTS") are unknown to Plaintiffs. These unknown Defendants and each of them claim some right, title, estate, lien or interest in the Subject Property hereinafter described adverse to Plaintiff's title and their claims and each of them constitute a cloud on Plaintiff's title to the Subject Property. Plaintiffs are informed and therefore believe, and on that basis allege that each fictitiously named herein as a DOE is responsible for the events happening hereinafter alleged. Plaintiffs will seek leave of Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendants when ascertained.

12.    Plaintiffs are informed and therefore believe and on that basis allege that at all times mentioned herein, the UNKNOWN DEFENDANTS are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers and co-conspirators of each and every other named or unnamed Defendants in this Complaint. Plaintiffs are informed and therefore believe and on that basis allege that each of said Defendants is and at all relevant times herein, was acting within the scope and consent of the remaining named and unnamed Defendants.

13.    Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

14.    As a result of their transactional activities, Defendants and each of them are and were subject to and must comply with the Federal Truth In Lending Act (hereinafter referred to as "TILA") [15 U.S.C. §1601-16666j] and with the Act's corresponding Regulation Z (hereinafter referred to as "Reg. Z") [24 C.F.R § 3500.1-3500.17]; the Real Estate Settlement Procedures Act (hereinafter referred to as "RESPA") [12 U.S.C. § 2601 et.seq.]; Unfair and Deceptive Business Practices and Acts [UDAP Statutes].

**JURISDICTION**

15.    The transactions and events which are the subject matter of this Complaint all occurred within the County of Deschutes, State of Oregon.

16.    This Court has personal jurisdiction over the parties as all Defendants engage in business within the State of Oregon, County of Deschutes, and thus have sufficient contacts.

17.    Plaintiff's Complaint is rife with claims based on Federal law. For instance, Plaintiff alleges that Defendants have "violated TILA, HOEPA, RESPA and the Regulations X and Z

promulgated thereunder." The complaint also bases its negligence and breach of fiduciary duty causes of action on "TILA, HOEPA, RESPA and the Regulations X and Z." In addition, Plaintiff alleges that defendants engaged in deceptive advertising and have committed a variety of unfair and unlawful business practices prohibited by Federal and State law, including *15 USC section 45* et seq. - Deceptive Practices Act." Last, Plaintiff's complaint asserts a RICO claim wherein Plaintiff claims that Defendants violated 18 U.S.C. 1343, 18 U.S.C. 1952, 18 U.S.C. 1956, 18 U.S.C. 1957, 18 U.S.C. 1961 and 18 U.S.C. 1962. Federal question jurisdiction exists because Plaintiff's claims depend on the determination of Plaintiff's rights and Defendants' duties, if any, under federal law.

18.    This Court has subject matter jurisdiction based upon federal question under 28 U.S.C. §§ 1331 and 1367, and 15 U.S.C. § 1692, and 15 U.S.C. § 1640(e). This is an action asserting violations of federal statutes commonly known as TILA, RESPA, and Regulation Z and the Fair Debt Collection Practices Act, with additional claims under California law. These claims all arise out of the same controversy and sequence of events.

19.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that all, or a substantial part, of the events giving rise to the claims asserted herein occurred in this judicial district.

20.    This Court has jurisdiction over state claims by virtue of pendant jurisdiction.

### FACTUAL ALLEGATIONS

21.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

22.    The core of this action arises out of a loan to refinance the Subject Residence, of which Plaintiffs are the rightful owners, and subsequent foreclosure related activity.

23.    For years mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home. Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease

until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure. The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, equity stripping, incorporating payment penalties, negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics. All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America. Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

24.    The loan product sold to Plaintiffs in this case was exactly the kind of loan that has contributed to our national problem. The Defendants were aware of this trend, and possessed the foresight to advise Plaintiffs of this risk. They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiffs face the potential of losing their home to the very entity and entities that placed them in this position.

25.    On or about March 19, 2007 (hereinafter referred to as "Closing Date") Plaintiffs entered into a consumer credit transaction with HYPERION by obtaining a $342,000.00 mortgage loan secured by Plaintiff's principal residence, (aka Subject Property). This note was secured by a First Trust Deed on the Property in favor of HYPERION.

26.    The terms of the finance transaction with TLT are not clear or conspicuous, nor consistent, and are illegal. This loan was underwritten without proper due diligence by TLT and

HYPERION as evidenced by their failure to verify borrower's income by way of borrower's employer and establish the uncertain and fluctuating nature of commission income.

27.   In addition, and unbeknownst to Plaintiffs, TLT and HYPERION illegally, deceptively and/or otherwise unjustly, qualified Plaintiff for a loan which TLT and HYPERION knew or should have known that Plaintiffs could not qualify for or afford the loan.  The underwriter approved this loan based upon credit scores and a cursory examination of borrower's income only.  The underwriter did not verify employment with Plaintiffs' employer or discuss the likelihood that the earned commissions would continue at the same level as stated.  Had TLT and HYPERION used a more accurate and appropriate level of scrutiny of determining the debt to income ratio, Plaintiff would not have qualified for the loan in the first place.

28.   Consequently, TLT and HYPERION sold Plaintiff a loan product that it knew or should have known would never be able to be fully paid back by Plaintiff. TLT and HYPERION ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiff's rights sold Plaintiff a deceptive loan product.

29.   There was no determination of the ability of the borrower to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

30.   HALLIGAN was the appraiser.  They succumbed to the pressure applied by HYPERION and TLT to fabricate a value for the Subject Property to be consistent with the amount to be loaned. HALLIGAN was an essential and indispensible party to the transaction because without their fictitious representation of value of the Subject Property, underwriting could not have been done.  HALLIGAN is a predicate actor in the enterprise in fact.

31.   Likewise, WESTERN, the title company, was an essential and indispensible party to the transaction.  They were necessary to provide escrow services and title insurance.  Without their role, the transaction could not be completed.  WESTERN is a predicate actor in the enterprise in fact.

32.    NW is the putative trust deed trustee and as a result is bound by the language in the deed of trust.  Only the note holder/note owner, or the duly authorized agent, can instruct the trustee to exercise the foreclosure provisions in the deed of trust.  WELLS FARGO is not the note holder/note owner for the reason that the note has been deconstructed by and through securitization of the loan. Therefore WELLS FARGO is an interloper in the impending foreclosure action.

33.    Defendants, and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants.  Plaintiffs had no idea that the loan that is the object of this Complaint was interest only for the first 10 years and that a much higher payment was to follow.

34.    The purpose of entering into the above-described loan transactions was for Plaintiffs to eventually own the Property. That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' actions alleged herein.

35.    A certified forensic audit of the Plaintiff's loan documents revealed the following legal violations which were incurred during the handling and processing of Plaintiff's loan.

36.    Plaintiffs are informed and believe and therefore allege that Defendants did not comply with the requirement to provide Plaintiffs with a Loan Origination Agreement.

37.    Plaintiffs are informed and believe and therefore allege that the underwriter approved this loan based only upon a cursory examination of income and a medium to high risk credit score and a belief that the property would continue to increase in value and that the Plaintiff should have been declined for this loan.

38.    Plaintiffs are informed and believe and therefore allege that based on a Real Income Analysis, with the type of take-home income Plaintiffs possess and that was clearly disclosed to Defendants, that the borrower would not be able to support the home payment over an extended period.

39.     Plaintiffs are informed and believe and therefore allege that Defendants failed to provide Plaintiffs with written notice of the furnishing of negative credit information to consumer reporting agency after Defendants furnished such negative credit information about Plaintiffs.

40.     Plaintiffs are informed and believe and therefore allege that Defendants breached their fiduciary duty to Plaintiff because they knew or should have known that the Plaintiff will or had a strong likelihood of defaulting on this loan.  Defendants have a fiduciary duty to the borrower to not place them in harm's way.

41.     Plaintiffs are informed and believe and therefore allege that it was in the best interest of the Defendants to promote the particular program for which they approved the Plaintiff. It led to a maximization of profits for the Defendants with no concern for the Plaintiffs financial position or livelihood.

42.     Plaintiffs are informed and believe and therefore allege that as a result of the practices of Defendants, and each of them throughout the handling of this loan, that such practices are consistent with the definition of predatory lending and encompass numerous characteristics that indicate such.

43.     Plaintiffs are informed and believe and therefore allege that Defendants provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions in violation of the Federal Trade Commission Act.

44.     Plaintiffs are informed and believe and therefore allege that Defendants engaged in unlawful, unfair or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising, rising to unfair and deceptive business practices pursuant to the Unfair and Deceptive Acts and Practices statutes.

## FIRST CAUSE OF ACTION
Declaratory Relief
(Against All Defendants)

45.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

46.     An actual controversy has arisen and now exists between Plaintiffs and Defendants regarding their respective rights and duties in that Plaintiffs contends that Defendants did not have the right to foreclose on the Subject Property because Defendants' security interest in the Subject Property has been rendered void by operation of law, pursuant to UDAP, TILA and RESPA. Thus the purported power of sale by Defendants no longer applies or is effective. Plaintiffs further contend that Defendants do not have the right to foreclose on the Subject Property because Defendants did not properly comply with proper delivery procedures under RESPA. Plaintiffs further contend that the Defendants perpetrated a fraudulent loan transaction.

47.     Plaintiffs requests that this Court find the purported power of sale contained in the loan of no force and effect, because Defendants actions in the processing, handling and attempted foreclosure of this loan has contained numerous violations of State and Federal laws designed to protect borrowers, which has directly caused Plaintiffs to be at an equitable disadvantage to Defendants. Plaintiffs further request that title to the Subject Property remain in Plaintiffs' name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation

48.     As a result of the Defendants' actions, Plaintiffs have suffered damages according to proof and seeks declaratory relief that Defendants' purported power of sale is void and has no force or effect against the Subject Property.

49.     Further, Defendants' actions have been willful, knowing and malicious.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION
### Contractual Breach of Implied Covenant of Good Faith and Fair Dealing
### (Against All Defendants)

50.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

51.     Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no

party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

52.    The terms of the loan imposed upon Defendants a duty of good faith and fair dealing in this matter.

53.    Defendants enjoyed substantial discretionary power affecting the rights of Plaintiff during the events alleged in this Complaint.  Defendants were required to exercise such power in good faith.

54.    Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiff when Defendants:

     A.  Willfully withheld numerous disclosures;

     B.  Willfully withheld notices in regard to underwriting standards, disclosures of additional income due to interest rate increases, and failure to disclose when negative credit scores were disseminated;

     C.  Willfully placed Plaintiffs in a loan that they did not qualify for, could not afford, and subjected them to further financial detriment while providing Defendants with financial benefits they would not have otherwise enjoyed.

55.    As a result of Defendants' breach of this covenant, Plaintiffs have suffered injury and has caused Plaintiffs the threat of loss of their home. Plaintiffs have incurred and continue to incur legal fees and costs, as well as expenses to right this wrong.

56.    Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same miscreant behavior.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**THIRD CAUSE OF ACTION**
Violation of TILA, 15 U.S.C. § 1601, et.seq.
(Against All Defendants)

57.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

58.   The loan is a consumer credit transaction subject to the provisions of TILA.

59.   Defendants HYPERION and WELLS FARGO are "creditors" as defined by 15 U.S.C. § 1602.

60.   The loan transaction between Plaintiffs and said Defendants was a consumer loan transaction wherein credit was extended to Plaintiffs, which was secured by an interest purportedly held by said Defendants in the Subject Property.

61.   Defendants violated TILA by failing to provide Plaintiffs with accurate material disclosures required under TILA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of mortgages in a language (both written and spoken) that they can understand and comprehend and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

62.   Any and all statutes of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et.seq. were tolled due to Defendants' failure to effectively provide the required disclosures and notices.

63.   As a consumer credit transaction, Defendants were required to provide Plaintiffs with mandatory Truth-in-Lending disclosure statements and notice of the borrower's right to rescind, among many other disclosures.

64.     In the course of soliciting and executing the Subject Loan and/or extending other consumer credit, said Defendants in numerous instances have violated the requirements of TILA and Regulation Z, said violations include but are not limited to the following:

D.   failing to disclose, or accurately disclose, the following information:

i.     the amount financed, in violation of § 128(a)(2) of TILA, 15 U.S.C. § 1638(a)(2), and § 226.18(b) of Regulation Z, 12 C.P.R. §226.18(b) in that on or about September 6, 2006, was provided a Truth-In-Lending Disclosure Statement that stated inter alia, the wrong loan amount, number of payments, the borrower, and APR.

ii.    the finance charge, in violation of §§ 106 and 128(a)(3) of TILA, 15 U.S.C. §§ 1605 and 1638(a)(3), and §§ 226.4 and 226.18(d) of Regulation Z, 12 *C.P.R.* §§ 226.4 and 226.18(d); in that on or about September 6, 2006, was provided a Truth-In-Lending Disclosure Statement that stated *inter alia,* the wrong loan amount, number of payments, the borrower, and APR.

iii.   the annual percentage rate, in violation of §§ 107 and 128(a)(4) of TILA, 15 U.S.C. §§ 1606 and 1638(a)(4), and §§ 226.18(e) and 226.22 of Regulation Z, 12 C.P.R. §§ 226.18(e) and 226.22; in that on or about September 6, 2006, was provided a Truth-In-Lending Disclosure Statement that stated inter alia, the wrong loan amount, number of payments, the borrower, and APR.

iv.    the payment schedule, in violation of § 128(a)(6) of TILA, 15 U.S.C. § 1638(a)(6), and § 226.18(g) of Regulation Z, 12 C.P.R. § 226.18(g).

65.     An actual controversy now exists between Plaintiffs, who asserts the right to rescind the loan on the Subject Property alleged in this Complaint, and based on information and belief, Defendants deny that right.

66.    As a direct and proximate result of Defendants' violations Plaintiffs have incurred and continue to incur damages in an amount according to proof but not yet ascertained including without limitation statutory damages and all amounts paid or to be paid in connection with the transaction.

67.    Defendants were unjustly enriched at the expense of Plaintiffs who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants.

68.    Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FOURTH CAUSE OF ACTION
### Violation of RESPA, 1 U.S.C. § 2601 et.seq.
### (Against All Defendants)

69.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

70.    The loan to Plaintiffs was a federally-regulated mortgage loan as defined in RESPA.

71.    Housing and Urban Development's (HUD's) 1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

> A.    Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and;
>
> B.    Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

72.    In applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA. The interest and income that Defendants have gained is

disproportionate to the situation Plaintiffs find themselves due directly to Defendant's failure to disclose that they will gain a financial benefit while Plaintiffs suffer financially as a result of the loan product sold to Plaintiffs.

73.    No separate fee agreements, disclosures of additional income due to interest rate increases or the proper form and procedure in relation to the Borrower's Rights to Cancel were provided.

74.    Defendants violated RESPA because the payments between the Defendants were misleading and designed to create a windfall. These actions were deceptive, fraudulent and self serving.

75.    As a proximate result of Defendants' actions, Plaintiffs have been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

## FIFTH CAUSE OF ACTION
### Rescission
### (Against All Defendants)

76.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

77.    Plaintiff is entitled to rescind the loan for all of the following reasons: 1) TILA violations; 2) failure to provide a Mortgage Loan Origination Agreement; 3) fraudulent concealment; and 4) public policy grounds, each of which provides independent grounds for relief.

78.    The Truth In Lending Act, 15 U.S.C §1601, et.seq. extends Plaintiffs' right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or Borrower's right to rescind. Here, Defendants have failed to properly disclose the details of the loan. Specifically, the initial disclosures do not contain TIL disclosures and lack of

diligence and collusion on the part of the broker, lender and underwriter and appraiser to place Plaintiffs in a loan Plaintiffs could not afford and would ultimately benefit Defendants.

79.    The public interest would be prejudiced by permitting the alleged contract to stand; such action would regard an unscrupulous lender.

80.    As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for rescission of the stated loan in its entirety.

**SIXTH CAUSE OF ACTION**
Fraud
(Against All Defendants)

81.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

82.    As alleged herein, Defendants have made several representations to Plaintiffs regarding material facts concerning the loan and the Subject Property.

83.    Defendants' representations concerning the Subject Loan and the Subject Residence were material to Plaintiffs' decision to refinance the Subject Property and make monthly payments in connection with the loan, and these representations were false.

84.    Defendants made these representations with knowledge of their falsity or without a reasonable basis to believe that they were true and with the knowledge or expectation that Plaintiffs would rely on the representations.

85.    In reasonable and justifiable reliance on Defendants' representations concerning the Subject Property and the loan, and without knowledge of their falsity, Plaintiffs were induced to their detriment to proceed to close the loan, secured by the Subject Property.

86.    But for Defendants' representations concerning the loan and the Subject Property, Plaintiffs would not have closed the loan.

87.  As a result of Defendants' negligent misrepresentations and Plaintiffs' reasonable and justifiable reliance thereon, Plaintiffs have been injured in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

88.  Defendants' conduct was reckless, oppressive and misleading, and an award of punitive damages is justified in an amount to be determined at trial. Trebling of all remedies should be ordered.

89.  The credit application and/or available W-2's provided by Plaintiffs were enough for Defendant's to know what type of loan should be offered, and what the Plaintiffs' could not afford. Any falsification of a credit application by a broker or seller for the purposes of securing a loan is de facto fraud. U.S. v. Robinson, 4th Circuit, 2004.

90.  Defendants engaged in the unlawful suppression of facts or circumstances by one of the parties to a contract from the other for self-serving purposes and financial gain, which in justice ought to be made known.

91.  Plaintiffs justifiably relied on Defendant's deception, which was the actual and proximate cause of Plaintiff's damages.

92.  Plaintiffs are entitled to exemplary and punitive damages for Defendants' fraudulent conduct in the sum to be determined at trial. Further, fraudulent concealment avoids the contract.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### SEVENTH CAUSE OF ACTION
Unfair And Deceptive Business Act Practices (UDAP)
(Against All Defendants)

93.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

94.  Defendants failed to undergo a diligent underwriting process for this loan and alleged in this complaint. They also failed to properly adjust and disclose facts and circumstances relating to Plaintiffs' Mortgage and placed Plaintiffs in a loan, by way of stated income and misleading facts, which they should never have been approved for because they could not afford it.

95.    Defendants did have knowledge of these facts, circumstances and risks but failed to disclose them.

96.    By reason of Defendants fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, said Defendant have violated unfair, and fraudulent business practices designed to deprive Plaintiff of her home, equity, as well as Plaintiffs past and future investment.

97.    By reason of the foregoing, Plaintiffs have suffered and continues to suffer damages in a sum which is, as yet unascertained.

WHEREFORE, Plaintiff prays for relief as set forth below.

## EIGHTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Against Defendants)

98.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

99.    Defendants owed a fiduciary duty to Plaintiffs and breached that duty by failing to advise or notify Plaintiffs when Defendant mortgage broker knew or should have known that Plaintiffs will or has a likelihood of defaulting on the loan, Defendants have a fiduciary duty to the borrower to not place Plaintiffs in harm's way.

100.    Regarding this loan, it was in the best interest of the Defendants to promote the particular program for which they approved the Plaintiffs. It led to a maximization of profits for the Defendants with no concern for the borrower.

101.    Defendant failed to provide material disclosures regarding the loan and its interest rate to Plaintiffs while in the capacity of Plaintiffs' lender.

102.    Defendants failed to fully comply with TILA/RESPA regulations and laws designated to protect Plaintiffs. The failure to do so placed Plaintiffs in a serious disadvantage and potential loss of their home. Such actions are violations of a fiduciary responsibility owed to Plaintiffs by Defendants.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## NINTH CAUSE OF ACTION
Unconscionability – UCC-2-302
(Against All Defendants)

103.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

104.  The mortgage is unconscionable in that it purports to waive rights to which the mortgagor is entitled by law.

105.  Specifically, the mortgage is unconscionable in that it seeks to have the mortgagor waive his right to a notice mandated by federal law at 12 U.S.C. §1701(x) (c) (5).

106.  Specifically, the mortgage is unconscionable in that it seeks to have the mortgagor waive his right to due process prior to entry upon the land he owns.

107.  Because the mortgage is unconscionable, it cannot be enforced in this action

108.  If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

109.  When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

110.  Here, based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards that the Defendants were required to follow, coupled with the windfall that the Defendants reaped financially from their predatory practices upon Plaintiffs, the court may find that the loan agreement and trust deed are unconscionable and of no force or effect.

WHEREFORE, Plaintiffs pray for restitution and relief as set forth below.

## TENTH CAUSE OF ACTION
### Unclean Hands
(Against All Defendants)

111.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

112.  Plaintiff is barred by the doctrine of "unclean hands" from the foreclosure that it seeks in connection with the subject transaction because the transaction violates a federal consumer protection statute and because Plaintiff has violated 12 U. S. C. §1701 (x) (c) (5), which requires mortgagees to send a pre-foreclosure notice to a mortgagor regarding home ownership counseling prior to instituting a foreclosure proceeding.

WHEREFORE, Plaintiffs pray for restitution and relief as set forth below.

## ELEVENTH CAUSE OF ACTION
### Conversion
(Against All Defendants)

113.  In securitization transactions, the sponsor eventually serves as the servicer of the Special Purpose Vehicle (SPV) asset pool. As servicer, the sponsor: a) determines when there has been impairment of collateral, and b) selects collateral for replacement; c) monitors collateral performance. To prove fraud, prosecutors must prove several elements beyond a reasonable doubt the elements below.

114.  **The "actus reus" (the guilty conduct)** — which consists of an affirmative act (and not merely an omission or failure to act) of misrepresentation of materials facts. In securitizations, the sponsor typically makes material misrepresentations: a) the sponsor/servicer selects the assets to be transferred to the SPV, and the terms of the Offering Prospectus typically misrepresents the level of objectivity and fairness of the servicer/sponsor; b) the sponsor/servicer selects collateral for substitution where there are problems – the past and present disclosure statements and asset-backed-securities offering documents materially misrepresent the sponsor/servicers objectivity/fairness.

115. **The "mens rea' or "mental" element of willfulness** — the specific intent to misrepresent the sponsor/servicer's acts, truthfulness and objectivity/fairness is manifested by the dual role of sponsor/servicer which constitutes a conflict-of-interest. Mens Rea is also clearly inferable from the facts and circumstances - the sponsor/servicer clearly has significant economic, psychological and legal incentives to maximize its profits by: a) delaying substitution of collateral for as long as possible, b) delaying recognition of collateral impairment, and c) substituting impaired collateral with sub-standard collateral; all of which make the sponsor very un-suitable for the role of servicer.

116. **The reliance element**. The sponsor's current and prospective shareholders and other investors rely heavily on the structure/arrangements of securitizations, associated disclosure statements and assurances of off-balance sheet treatment of SPV debt in securitizations, which are relatively complex. These form the primary source of knowledge and valuation terms for the investor.

117. **The victim suffers loss as a result of the misrepresentation** (direct or proximate causation). Investors suffer loss because of the sponsor/servicer' misrepresentations of its obligations – a) investors' estimates of the values of the sponsor's equity are inaccurate and too high due to the servicer's/sponsor's misrepresentations of the SPV debt, b) investors incur unnecessary trading costs to re-balance their portfolios as the sponsor is deemed more risky, c) the investor and the sponsor/servicer incurs additional monitoring costs whenever there is any report of impairment of collateral or substitution.

WHEREFORE, Plaintiffs pray for restitution and relief as set forth below.

### TWELFTH CAUSE OF ACTION
Counterfeiting
(Against All Defendants)

118. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

119. Whoever makes, utters or possesses a counterfeited security of a State or a political subdivision thereof or of an organization, or whoever makes, utters or possesses a forged security of a

State or political subdivision thereof or of an organization, with intent to deceive another person, organization, or government shall be fined under this title or imprisoned for not more than ten years, or both.

120.  The term "counterfeited" means a document that purports to be genuine but is not, because it has been falsely made or manufactured in its entirety;

121.  The term "forged" means a document that purports to be genuine but is not because it has been falsely altered, completed, signed, or endorsed, or contains a false addition thereto or insertion therein, or is a combination of parts of two or more genuine documents;

122.  The term "security" means - (A) a note, stock certificate, treasury stock certificate, bond, treasury bond, debenture, certificate of deposit, interest coupon, bill, check, draft, warrant, debit instrument as defined in section 916(c) of the Electronic Fund Transfer Act, money order, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest in or participation in any profit-sharing agreement, collateral-trust certificate, pre-reorganization certificate of subscription, transferable share, investment contract, voting trust certificate, or certificate of interest in tangible or intangible property; (B) an instrument evidencing ownership of goods, wares, or merchandise; (C) any other written instrument commonly known as a security; (D) a certificate of interest in, certificate of participation in, certificate for, receipt for, or warrant or option or other right to subscribe to or purchase, any of the foregoing; or (E) a blank form of any of the foregoing;

123.  The term "organization" means a legal entity, other than a government, established or organized for any purpose and includes a corporation, company, association, firm, partnership, joint stock company, foundation, institution, society, union, or any other association of persons which operates in or the activities of which affect interstate or foreign commerce; and

124.  Defendants, specifically WELLS FARGO and NW, knowingly, intentionally and willingly have attempted to deceive Plaintiffs by claiming enforcement authority as the real party in

interest to the promissory note, when they possess only a copy of such note, which is a counterfeit.  A promissory note is currency much like a bear bond and as such is not amenable to the same rules of evidence as business records.  The note cannot be coped and offered as a substitute for the original instrument.

WHEREFORE, Plaintiffs pray for restitution and relief as set forth below.

### THIRTEEN CAUSE OF ACTION
Racketeering Influenced Corrupt Organization Act (RICO) Violations
(Against All Defendants)

125.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

126.  In any RICO claim it is essential for the Plaintiff to make allegations with particularity to the extent possible using the following guide: WHO did WHAT to WHOM, HOW did they do it, WHERE did they do it, WHEN did they do it, WHAT law was violated and WHAT are the damages? Certain Defendants are in a superior position and possess the information needed to complete this very complex pleading.

127.  In 'true-sale', 'disguised loan' or 'assignment' securitizations, there are fraudulent transactions which serve as 'predicate acts' under federal RICO statutes[30]. The specific RICO sections implicated are:

A.  Section 1341 (mail fraud)

B.  Section 1343 (wire fraud)

C.  Section 1344 (financial institution fraud)

D.  Section 1957 (engaging in monetary transactions in property derived from specified unlawful activity)

E.  Section 1952 (racketeering)

128.    The prices of the collateral are determined in negotiations between the sponsor/issuer and the intermediary bank and on occasion, the SPV's trustees. This presents opportunities for "predicate acts" (ie. fraud, conversion, etc.) because:

A.    The collateral could be under-valued or over-valued. There is no state or federal laws that require independent valuation of collateral or appointment of independent/certified trustees in securitization transactions. The parties involved are often business acquaintances. The originator/sponsor controls the entire process.

B.    The trustees can be, and are influenced by the sponsor/originator and or intermediary investment-bank.

C.    The required disclosure of collateral is sometimes insufficient – a) does not include historical performance of collateral pools, b) does not include criteria for selection of collateral and for substitution of collateral, c) criteria for replacement of impaired collateral is sometimes not reasonable.

D.    Mail and wire are used extensively in communications with investors and participants in the transaction.

E.    There is compulsion – because the intermediary/investment bank has very substantial incentives to under-price the securities, and to inflate/deflate the value of the collateral in order to consummate the transaction and earn fees.

129.    The entire securitization process constitutes violations of federal RICO statutes because:

A.    There is the requisite criminal or civil "enterprise" – consisting of the sponsor/issuer, the trustees and the intermediary bank. These three parties work closely together to effect the securitization transaction.

B.    There are "predicate acts" of:

i.    Mail fraud - using the mails for sending out materials among themselves and to investors.

    ii.   Wire fraud – using wires to engage in fraud by communicating with investors.

    iii.   Conversion – where there isn't proper title to collateral.

    iv.   Deceit- misrepresentation of issues and facts pertaining to the securitization transaction.

    v.   Securities fraud – disclosure issues.

    vi.   Loss of profit opportunity.

    vii.   Making false statements and or misleading representations about the value of the collateral.

    viii.   Stripping the originator/issuer of the ability to pay debt claims or judgment claims in bankruptcy court – this may apply where the sponsor is financially distressed and the cash proceeds of the transaction are significantly less than the value of the collateral.

C.   There is typically the requisite 'intent' by members of the enterprise – evident in knowledge (actual and inferable), acts, omissions, purpose (actual and inferable) and results. Intent can be reasonably inferred from: a) existence of a sponsor that seeks to raise capital – and obviously cannot raise such capital on better terms using other means, b) existence of an investment bank that has very strong incentives to consummate the transaction on any agreeable (but not necessarily reasonable) terms.

WHEREFORE, Plaintiffs pray for restitution and relief as set forth below.

## FOURTEENTH CAUSE OF ACTION
15 U.S.C. 1692 ET. SEQ.
(Against Northwest Trustee Services, Inc.)

130.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

131.  NW violated the FDCPA. Defendants' violations include, but are not limited to, the following:

A. NW violated 15 U.S.C. § 1692g(b) by failing to provide verification of the debt and continuing its debt collection efforts after the plaintiff had disputed the debt in writing within thirty days of receiving notice of the 15 U.S.C. § 1692g debt validation rights.

B. NW violated 15 USC 1692f by attempting to collect an amount not expressly authorized by the agreement creating the debt or permitted by law.

C. QLSC violated 15 USC 1692e by falsely stating the amount owing on the debts it was collecting from Plaintiff, by threatening and taking actions not legally permitted to be taken and communicating credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

132.  As a result of the above violations of the FDCPA, NW is liable to Plaintiff for Plaintiff's actual damages, statutory damages, and costs.

WHEREFORE, Plaintiffs pray for restitution and relief as set forth below.

**FIFTEENTH CAUSE OF ACTION**
Wrongful Foreclosure.
(HYPERION, WELLS FARGO and NW.)

133.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

134.  Because of the material defects in the loan, fraud in procuring the loan, and violations of federal and state law relating to the making of the loan, Defendants have no right to foreclose on the Note or security therefore and their efforts to do so constitute wrongful foreclosure.

135.  Plaintiffs are informed and believe, and thereon allege, that Defendants HYPERION, WELLS FARGO and NW were not, and are not, in possession of the Note pertaining to the Subject Residence, and are not otherwise entitled to payment. Indeed, upon information and belief, the Note has been further assigned to a third party and has been securitized. Moreover, Plaintiffs are informed

and believe, and thereon allege, that said Defendants are not "person[s] entitled to enforce" the security interest on the Subject Property, as that term is defined in Commercial Code § 3-301 and therefore lack the power of sale as provided in the deed of trust

136.   The final stage of a foreclosure is a sale of the property at public auction. The trustee has the duty to make the sale fair and equitable to the trustor, plaintiffs herein. Any bid by the trustee for itself is suspect and unlawful. It is unlawful to offer to accept or accept consideration not bid, to fix or restrain bidding and if an interested party is defrauded as a result, can recover damages and the wrongdoer can be fined, imprisoned or both.  At the auction third parties can bid to purchase the property. The current party entitled to obtain the money or property from the sale must give the trustee instructions on how much to accept at the sale, and/or whether to "credit bid" any specific amount, up to the full amount owed to the current beneficiary on the loan. Defendants HYPERION, WELLS FARGO and NW were not, and are not, the current beneficiaries on the deed of trust entitled to give instructions to the trustee, nor were they or are they entitled to keep the proceeds from any sale or the property. In commencing and processing a foreclosure said defendants committed deceit or fraud entitling the plaintiffs to damages.

137.   As a direct and proximate result of said Defendants' misconduct, Plaintiffs have suffered damages, including, without limitation, direct monetary loss, consequential damages, and emotional distress.

138.   In committing the wrongful acts alleged herein, Defendants HYPERION, WELLS FARGO and NW acted with malice, oppression and fraud. Said Defendants' willful conduct warrants an award of exemplary damages in an amount sufficient to punish the wrongful conduct alleged herein and deter such misconduct in the future.

WHEREFORE, Plaintiffs pray for restitution and relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff will ask for the following for each Cause of Action sustained:

1.    For Compensatory Damages in an amount to be determined by proof at trial.

2.    For Special Damages in an amount to be determined by proof at trial.

3.    For General Damages in an amount to be determined by proof at trial.

4.    For Treble Damages in an amount to be determined by proof at trial.

5.    For Punitive Damages as against the individual Defendants.

6.    For Attorney's Fees and Costs of this action.

7.    For Declaratory Relief, including a declaration that Plaintiff is the prevailing party.

8.    For a judgment rescinding the Loan and Security Agreement and setting forth terms of restitution.

9.    For any prejudgment or other interest according to law.

10.   Any other and further relief that the Court considers just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiffs hereby demand a trial by a jury in this instant case.

Dated: _2 - 4_____, 2010.

Respectfully submitted and signed by:

_____          _____
Don M. Hogan, without prejudice          Linda M. Hogan, without prejudice

Plaintiff's Verified Complaint – Page 28 of 29

# VERIFICATION

We, Don M. Hogan and Linda M. Hogan, are the Plaintiffs in the above-entitled action. We have read the foregoing and know the contents thereof. The same is true of our own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, we believe it to be true, we declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in the city of Medford, and State of Oregon.

DATED: February 4 2010

_____          _____
Don M. Hogan, without prejudice          Linda M. Hogan, without prejudice