UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

FERREL L. AGARD,                                    Case No. 810-77338-reg

                                                    Chapter 7
                              Debtor.
-----------------------------------------------------------------x

### MEMORANDUM DECISION

Before the Court is a motion (the "Motion") seeking relief from the automatic stay

pursuant to 11 U.S.C. § 362(d)(1) and (2), to foreclose on a secured interest in the Debtor's real

property located in Westbury, New York (the "Property").  The movant is Select Portfolio

Servicing, Inc. ("Select Portfolio" or "Movant"), as servicer for U.S. Bank National Association,

as Trustee for First Franklin Mortgage Loan Trust 2006-FF12, Mortgage Pass-Through

Certificates, Series 2006-FF12 ("U.S. Bank").  The Debtor filed limited opposition to the Motion

contesting the Movant's standing to seek relief from stay.  The Debtor argues that the only

interest U.S. Bank holds in the underlying mortgage was received by way of an assignment from

the Mortgage Electronic Registration System a/k/a MERS, as a "nominee" for the original

lender.  The Debtor's argument raises a fundamental question as to whether MERS had the legal

authority to assign a valid and enforceable interest in the subject mortgage.  Because U.S. Bank's

rights can be no greater than the rights as transferred by its assignor – MERS – the Debtor argues

that the Movant, acting on behalf of U.S. Bank, has failed to establish that it holds an

enforceable

right against the Property.[1]  The Movant's initial response to the Debtor's opposition was that MERS's authority to assign the mortgage to U.S. Bank is derived from the mortgage itself which allegedly grants to MERS its status as both "nominee" of the mortgagee and "mortgagee of record."  The Movant later supplemented its papers taking the position that U.S. Bank is a creditor with standing to seek relief from stay by virtue of a judgment of foreclosure and sale entered in its favor by the state court prior to the filing of the bankruptcy.  The Movant argues that the judgment of foreclosure is a final adjudication as to U.S. Bank's status as a secured creditor and therefore the *Rooker-Feldman* doctrine prohibits this Court from looking behind the judgment and questioning whether U.S. Bank has proper standing before this Court by virtue of a valid assignment of the mortgage from MERS.

The Court received extensive briefing and oral argument from MERS, as an intervenor in these proceedings which go beyond the arguments presented by the Movant.  In addition to the rights created by the mortgage documents themselves, MERS argues that the terms of its membership agreement with the original lender and its successors in interest, as well as New York state agency laws, give MERS the authority to assign the mortgage.  MERS argues that it holds legal title to mortgages for its member/lenders as both "nominee" and "mortgagee of

---

[1]    The Debtor also questions whether Select Portfolio has the authority and the standing to seek relief from the automatic stay.  The Movant argues that Select Portfolio has standing to bring the Motion based upon its status as "servicer" of the Mortgage, and attaches an affidavit of a vice president of Select Portfolio attesting to that servicing relationship.  Caselaw has established that a mortgage servicer has standing to seek relief from the automatic stay as a party in interest.  *See, e.g.*, *Greer v. O'Dell*, 305 F.3d 1297 (11th Cir. 2002); *In re Woodberry*, 383 B.R. 373 (Bankr. D.S.C. 2008).  This presumes, however, that the lender for whom the servicer acts validly holds the subject note and mortgage.  Thus, this Decision will focus on whether U.S. Bank validly holds the subject note and mortgage.

record." As such, it argues that any member/lender which holds a note secured by real property, that assigns that note to another member by way of entry into the MERS database, need not also assign the mortgage because legal title to the mortgage remains in the name of MERS, as agent for any member/lender which holds the corresponding note. MERS's position is that if a MERS member directs it to provide a written assignment of the mortgage, MERS has the legal authority, as an agent for each of its members, to assign mortgages to the member/lender currently holding the note as reflected in the MERS database.

For the reasons that follow, the Debtor's objection to the Motion is overruled and the Motion is granted. The Debtor's objection is overruled by application of either the *Rooker-Feldman* doctrine, or *res judicata*. Under those doctrines, this Court must accept the state court judgment of foreclosure as evidence of U.S. Bank's status as a creditor secured by the Property. Such status is sufficient to establish the Movant's standing to seek relief from the automatic stay. The Motion is granted on the merits because the Movant has shown, and the Debtor has not disputed, sufficient basis to lift the stay under Section 362(d).

Although the Court is constrained in this case to give full force and effect to the state court judgment of foreclosure, there are numerous other cases before this Court which present identical issues with respect to MERS and in which there have been no prior dispositive state court decisions. This Court has deferred rulings on dozens of other motions for relief from stay pending the resolution of the issue of whether an entity which acquires its interests in a mortgage by way of assignment from MERS, as nominee, is a valid secured creditor with standing to seek relief from the automatic stay. It is for this reason that the Court's decision in this matter will address the issue of whether the Movant has established standing in this case notwithstanding the

existence of the foreclosure judgment.  The Court believes this analysis is necessary for the precedential effect it will have on other cases pending before this Court.

The Court recognizes that an adverse ruling regarding MERS's authority to assign mortgages or act on behalf of its member/lenders could have a significant impact on MERS and upon the lenders which do business with MERS throughout the United States.  However, the Court must resolve the instant matter by applying the laws as they exist today.  It is up to the legislative branch, if it chooses, to amend the current statutes to confer upon MERS the requisite authority to assign mortgages under its current business practices.  MERS and its partners made the decision to create and operate under a business model that was designed in large part to avoid the requirements of the traditional mortgage recording process.  This Court does not accept the argument that because MERS may be involved with 50% of all residential mortgages in the country, that is reason enough for this Court to turn a blind eye to the fact that this process does not comply with the law.

*Facts*

### Procedural Background

On September 20, 2010, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code.  In Schedule A to the petition, the Debtor lists a joint ownership interest in the Property described as follows:

> A "[s]ingle family home owned with son, deed in son's name since 2007; used as primary residence . . .. Debtor was on original deed and is liable on the mortgage, therefore has equitable title.  Debtor is in default of the mortgage with a principal balance of over $450,000.00.  The house is worth approximately $350,000.  A

foreclosure sale was scheduled 9/21/10."

According to Schedule D, the Property is valued at $350,000 and is encumbered by a mortgage in the amount of $536,920.67 held by "SPS Select Portfolio Servicing."

On October 14, 2010, the Movant filed the Motion seeking relief from the automatic stay pursuant to 11 U.S.C. §362(d) to foreclose on the Property.  The Motion does not state that a foreclosure proceeding had been commenced or that a judgment of foreclosure was granted prior to the filing of the bankruptcy petition.  Nor does it mention that the Debtor holds only equitable title and does not hold legal title to the Property.  Instead, Movant alleges that U.S. Bank is the "holder" of the Mortgage; that the last mortgage payment it received from the Debtor was applied to the July, 2008 payment; and that the Debtor has failed to make any post-petition payments to the Movant.  Movant also asserts that as of September 24, 2010, the total indebtedness on the Note and Mortgage was $542,902.33 and the Debtor lists the value of the Property at $350,000 in its schedules.  On that basis, Movant seeks entry of an order vacating the stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(2).

Annexed to the Motion are copies of the following documents:

• Adjustable Rate Note, dated June 9, 2006, executed by the Debtor as borrower and listing First Franklin a Division of Na. City Bank of In. ("First Franklin") as the lender ("Note");

• Balloon Note Addendum to the Note, dated June 9, 2006;

• Mortgage, dated June 9, 2006 executed by the Debtor and listing First Franklin as lender, and MERS as nominee for First Franklin and First Franklin's successors and assigns ("Mortgage");

• Adjustable Rate and Balloon Rider, dated June 9, 2006;

• Addendum to Promissory Note and Security Agreement executed by the Debtor; and

- Assignment of Mortgage, dated February 1, 2008, listing MERS as nominee for First Franklin as assignor, and the Movant, U.S. Bank National Association, as Trustee for First Franklin Mortgage Loan Trust 2006- FF12, Mortgage Pass-through Certificates, Series 2006-FF12, as assignee ("Assignment of Mortgage").

***The Arguments of the Parties***

On October 27, 2010, the Debtor filed "limited opposition" to the Motion, alleging that the Movant lacks standing to seek the relief requested because MERS, the purported assignor to the Movant, did not have authority to assign the Mortgage and therefore the Movant cannot establish that it is a bona fide holder of a valid secured interest in the Property.

The Movant responded to the Debtor's limited opposition regarding MERS's authority to assign by referring to the provisions of the Mortgage which purport to create a "nominee" relationship between MERS and First Franklin. In conclusory fashion, the Movant states that it therefore follows that MERS's standing to assign is based upon its nominee status.

On November 15, 2010, a hearing was held and the Court gave both the Debtor and Movant the opportunity to file supplemental briefs on the issues raised by the Debtor's limited opposition.

On December 8, 2010, the Movant filed a memorandum of law in support of the Motion arguing that this Court lacks jurisdiction to adjudicate the issue of whether MERS had authority to assign the Mortgage, and even assuming the Court did have jurisdiction to decide this issue, under New York law the MERS assignment was valid. In support of its jurisdictional argument, the Movant advises the Court (for the first time) that a Judgement of Foreclosure and Sale ("Judgment of Foreclosure") was entered by the state court in favor of the Movant on November 24, 2008, and any judicial review of the Judgment of Foreclosure is barred by the doctrines of

*res judicata, Rooker-Feldman*, and judicial estoppel.[2]  The Movant argues that the Debtor had a full and fair opportunity to litigate these issues in state court, but chose to default, and cannot now challenge the state court's adjudication as to the Movant's status as a secured creditor or holder of the Note and Mortgage, or its standing to seek relief from the automatic stay in this Court.  The Movant also notes that the Debtor admits in her petition and schedules that she is liable on the Mortgage, that it was in default and the subject of a foreclosure sale, and thus judicial estoppel bars her arguments to the contrary.

In addition to its preclusion arguments, on the underlying merits of its position the Movant cites to caselaw holding that MERS assignments similar to the assignment in this case, are valid and enforceable.  *See U.S. Bank, N.A. v. Flynn*, 897 N.Y.S. 2d 855, 858 (N.Y. Sup. Ct. 2010); *Kiah v. Aurora Loan Services, LLC*, 2010 U.S. Dist. LEXIS 121252, at *1 (D. Mass. Nov. 16, 2010); *Perry v. Nat'l Default Servicing Corp.*, 2010 U.S. Dist. LEXIS 92907, at *1 (Dist. N.D. Cal. Aug. 20, 2010).  It is the Movant's position that the provisions of the Mortgage grant to MERS the right to assign the Mortgage as "nominee," or agent, on behalf of the lender, First Franklin.  Specifically, Movant relies on the recitations of the Mortgage pursuant to which the "Borrower" acknowledges that MERS holds bare legal title to the Mortgage, but has the right "(A) to exercise any or all those rights, including, but not limited to, the right to foreclose and

---

[2]  The Judgment of Foreclosure names the Debtor and an individual, Shelly English, as defendants.  Shelly English is the Debtor's daughter-in-law.  At a hearing held on December 13, 2010, the Debtor's counsel stated that he "believed" the Debtor transferred title to the Property to her son, Leroy English, in 2007.  This is consistent with information provided by the Debtor in her petition and schedules.  Leroy English, however, was not named in the foreclosure action.  No one in this case has addressed the issue of whether the proper parties were named in the foreclosure action.  However, absent an argument to the contrary, this Court can only presume that the Judgment of Foreclosure is a binding final judgment by a court of competent jurisdiction.

sell the Property; and (B) to take any action required of Lender including, but not limited to, releasing and canceling [the Mortgage]." In addition, the Movant argues that MERS's status as a "mortgagee" and thus its authority to assign the Mortgage is supported by the New York Real Property Actions and Proceedings Law ("RPAPL") and New York Real Property Law ("RPL"). Movant cites to RPAPL § 1921-a which allows a "mortgagee" to execute and deliver partial releases of lien, and argues that MERS falls within the definition of "mortgagee" which includes the "current holder of the mortgage of record . . . or . . . their . . . agents, successors or assigns." N.Y. Real Prop. Acts. Law § 1921(9)(a) (McKinney 2011). Although the definition of "mortgagee" cited to by the Movant only applies to RPAPL § 1921, Movant argues that it is a "mortgagee" vested with the authority to execute and deliver a loan payoff statement; execute and deliver a discharge of mortgage and assign a mortgage pursuant to RPL §§ 274 and 275.

In addition to its status as "mortgagee," Movant also argues that the assignment is valid because MERS is an "agent" of each of its member banks under the general laws of agency in New York, *see* N.Y. Gen. Oblig. Law § 5-1501(1) (McKinney 2011),[3] and public policy requires the liberal interpretation and judicial recognition of the principal-agent relationship. *See Arens v. Shainswitt*, 37 A.D.2d 274 (N.Y. App. Div. 1971), *aff'd* 29 N.Y.2d 663 (1971). In the instant case, Movant argues, the Mortgage appoints MERS as "nominee," read "agent," for the original

---

[3]     Movant cites to New York General Obligations Law for the proposition that "an agency agreement may take any form 'desired by the parties concerned.'" The direct quote "desired by the parties concerned" seems to be attributed to the General Obligations Law citation, however, the Court could find no such language in the current version of § 5-1501(1). That provision, rather, defines an agent as "a person granted authority to act as attorney-in-fact for the principal *under a power of attorney*, and includes the original agent and any co-agent or successor agent. Unless the context indicates otherwise, an 'agent' designated in a power of attorney shall mean 'attorney-in-fact' for the purposes of this title. An agent acting under a power of attorney has a fiduciary relationship with the principal." N.Y. Gen. Oblig. Law § 5-1501(1) (McKinney 2011) (emphasis added).

lender and the original lender's successors and assigns.  As nominee/agent for the lender, *and* as mortgagee of record, Movant argues MERS had the authority to assign the Mortgage to the Movant, U.S. Bank, "in accordance with the principal's instruction to its nominee MERS, to assign the mortgage lien to U.S. Bank . . . ."

Finally, Movant argues that even absent a legally enforceable assignment of the Mortgage, it is entitled to enforce the lien because U.S. Bank holds the Note.  The Movant argues that if it can establish that U.S. Bank is the legal holder the Note, the Mortgage by operation of law passes to the Movant because the Note and the Mortgage are deemed to be inseparable.  *See In re Conde-Dedonato*, 391 B.R. 247 (Bankr. E.D.N.Y. 2008).  The Movant represents, but has not proven, that U.S. Bank is the rightful holder of the Note, and further argues that the assignment of the Note has to this point not been contested in this proceeding.

MERS moved to intervene in this matter pursuant to Fed. R. Bankr. P. 7024 because:

> 12.    The Court's determination of the MERS Issue directly affects the business model of MERS.  Additionally, approximately 50% of all consumer mortgages in the United States are held in the name of MERS, as the mortgagee of record.
> 13.    The Court's determination of the MERS Issue will have a significant impact on MERS as well as the mortgage industry in New York and the United States.
> 14.    MERS has a direct financial stake in the outcome of this contested matter, and any determination of the MERS Issue has a direct impact on MERS.

(Motion to Intervene, ¶¶12-14).

Permission to intervene was granted at a hearing held on December 13, 2010.

In addition to adopting the arguments asserted by the Movant, MERS strenuously defends its authority to act as mortgagee pursuant to the procedures for processing this and other mortgages under the MERS "system."  First, MERS points out that the Mortgage itself

designates MERS as the "nominee" for the original lender, First Franklin, and its successors and

assigns.  In addition, the lender designates, and the Debtor agrees to recognize, MERS "as the

mortgagee of record and as nominee for 'Lender and Lender's successors and assigns'" and as

such the Debtor "expressly agreed without qualification that MERS had the right to foreclose

upon the premises as well as exercise any and all rights as nominee for the Lender." (MERS

Memorandum of Law at 7).  These designations as "nominee," and "mortgagee of record," and

the Debtor's recognition thereof, it argues, leads to the conclusion that MERS was authorized as

a matter of law to assign the Mortgage to U.S. Bank.

Although MERS believes that the mortgage documents alone provide it with authority to

effectuate the assignment at issue, they also urge the Court to broaden its analysis and read the

documents in the context of the overall "MERS System."  According to MERS, each

participating bank/lender agrees to be bound by the terms of a membership agreement pursuant

to which the member appoints MERS to act as its authorized agent with authority to, among

other things, hold legal title to mortgages and as a result, MERS is empowered to execute

assignments of mortgage on behalf of all its member banks.  In this particular case, MERS

maintains that as a member of MERS and pursuant to the MERS membership agreement, the

loan originator in this case, First Franklin, appointed MERS "to act as its agent to hold the

Mortgage as nominee on First Franklin's behalf, and on behalf of First Franklin's successors and

assigns."  MERS explains that subsequent to the mortgage's inception, First Franklin assigned

the Note to Aurora Bank FSB f/k/a Lehman Brothers Bank ("Aurora"), another MERS member.

According to MERS, note assignments among MERS members are tracked via self-effectuated

and self-monitored computer entries into the MERS database.  As a MERS member, by

operation of the MERS membership rules, Aurora is deemed to have appointed MERS to act as its agent to hold the Mortgage as nominee. Aurora subsequently assigned the Note to U.S. Bank, also a MERS member. By operation of the MERS membership agreement, U.S. Bank is deemed to have appointed MERS to act as its agent to hold the Mortgage as nominee. Then, according to MERS, "U.S. Bank, as the holder of the note, under the MERS Membership Rules, chose to instruct MERS to assign the Mortgage to U.S. Bank prior to commencing the foreclosure proceedings by U.S. Bank." (Affirmation of William C. Hultman, ¶12).

MERS argues that the express terms of the mortgage coupled with the provisions of the MERS membership agreement, is "more than sufficient to create an agency relationship between MERS and lender and the lender's successors in interest" under New York law and as a result establish MERS's authority to assign the Mortgage. (MERS Memorandum of Law at 7).

On December 20, 2010, the Debtor filed supplemental opposition to the Motion. The Debtor argues that the *Rooker-Feldman* doctrine should not preclude judicial review in this case because the Debtor's objection to the Motion raises issues that could not have been raised in the state court foreclosure action, namely the validity of the assignment and standing to lift the stay. The Debtor also argues that the *Rooker-Feldman* doctrine does not apply because the Judgment of Foreclosure was entered by default. Finally, she also argues that the bankruptcy court can review matters "which are void or fraudulent on its face." *See In re Ward*, 423 B.R. 22 (Bankr. E.D.N.Y. 2010). The Debtor says that she is "alleging questionable, even possibly fraudulent conduct by MERS in regards to transferring notes and lifting the stay." (Debtor's Supplemental Opposition at 3).

The Movant filed supplemental papers on December 23, 2010 arguing that the Motion is

moot because the Property is no longer an asset of the estate as a result of the Chapter 7 Trustee's "report of no distribution," and as such, the Section 362(a) automatic stay was dissolved upon the entry of a discharge on December 14, 2010.  *See Brooks v. Bank of New York Mellon*, No. DKC 09-1408, 2009 WL 3379928, at *2 (D. Md. Oct. 16, 2009); *Riggs Nat'l Bank of Washington, D.C. v. Perry*, 729 F.2d 982, 986 (4th Cir. 1984).

The Movant also maintains that *Rooker-Feldman does* apply to default judgments because that doctrine does not require that the prior judgment be a judgment "on the merits." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 n.1 (8th Cir. 1995); *see also Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, No. 04-3659, 2005 WL 3528921, at *2-3 (6th Cir. Dec. 22, 2005); *In re Dahlgren*, No. 09-18982, 2010 WL 5287400, at *1 (D.N.J. Dec. 17, 2010).  The Movant points out that the Debtor seems to be confusing the *Rooker-Feldman* doctrine with issue and claim preclusion and that the Debtor has misapplied Chief Judge Craig's ruling in *In re Ward*.

### *Discussion*

As a threshold matter, this Court will address the Movant's argument that this Motion has been mooted by the entry of the discharge order.

### *Effect of the Chapter 7 discharge on the automatic stay*

Section 362(c) provides that:

Except as provided in subsections (d), (e), (f), and (h) of this section--

(1) the stay of an act *against property of the estate* under subsection (a) of this section continues until such property is no longer property of the estate;

Case 8:10-cv-77338 reg Doc 41 Filed 02/10/11 Entered 02/10/11 14:13:10
Case 1:10-cv-03111-PA Document 30 Filed 02/25/11 Page 19 of 74 Page ID#:
322

(2) the stay of *any other act* under subsection (a) of this section continues until the earliest of--

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, *the time a discharge is granted or denied*;

11 U.S.C. § 362(c) (emphasis added).

Pursuant to Section 362(c)(1), the automatic stay which protects "property of the estate," as opposed to property of the debtor, continues until the property is no longer property of the estate regardless of the entry of the discharge. The provision of the statute relied upon by the Movant for the proposition that the automatic stay terminates upon the entry of a discharge, relates only to the stay of "any other act under subsection(a),", *i.e.*, an act against property that is *not* property of the estate, *i.e.,* is property "of the debtor." The relationship between property of the estate and property of the debtor is succinctly stated as follows:

> Property of the estate consists of all property of the debtor as of the date of the filing of the petition. 11 U.S.C. § 541. It remains property of the estate until it has been exempted by the debtor under § 522, abandoned by the trustee under § 554(a), or sold by the trustee under § 363. If property of the estate is not claimed exempt, sold, or abandoned by the trustee, it is abandoned to the debtor at the time the case is closed if the property was scheduled under § 521(1). If the property is not scheduled by the debtor and is not otherwise administered, it remains property of the estate even after the case has been closed.

> If the property in question is property of the estate, it remains subject to the automatic stay until it becomes property of the debtor and until the earlier of the time the case was closed, the case is dismissed, or a discharge is granted or denied in a chapter 7 case.

*In re Pullman*, 319 B.R. 443, 445 (Bankr. E.D. Va. 2004).

Movant's position seems to be that the Chapter 7 Trustee's filing of a "report of no distribution," otherwise known as a "no asset report," effectuated an abandonment of the real property at issue in this case, and therefore the Property has reverted back to the Debtor. However, Movant fails to cite the relevant statute.  Section 554(c) provides that "[u]nless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered *at the time of the closing* of a case is abandoned to the debtor and administered for purposes of section 350 of this title."  11 U.S.C. § 554(c) (emphasis added); Fed. R. Bankr. P. 6007.  Cases interpreting Section 554(c) hold that the filing of a report of no distribution does not effectuate an abandonment of estate property.  *See, e.g.*, *In re Israel,* 112 B.R. 481, 482 n.3 (Bankr. D. Conn. 1990) ("The filing of a no-asset report does not close a case and therefore does not constitute an abandonment of property of the estate.") (citing *e.g.*, *Zlogar v. Internal Revenue Serv. (In re Zlogar)*, 101 B.R. 1, 3 n.3 (Bankr. N.D. Ill. 1989); *Schwaber v. Reed (In re Reed)*, 89 B.R. 100, 104 (Bankr. C.D. Cal. 1988); 11 U.S.C. § 554(c)).

Because the real property at issue in this case has not been abandoned it remains property of the estate subject to Section 362(a) unless and until relief is granted under Section 362(d).


### *Rooker-Feldman and res judicata*[4]

The Movant argues that U.S. Bank's status as a secured creditor, which is the basis for its standing in this case, already has been determined by the state court and that determination cannot be revisited here.  The Movant relies on both the *Rooker-Feldman* doctrine and *res*

---

[4]      Because the Debtor's objection is overruled under *Rooker-Feldman* and *res judicata*, the Court will not address the merits of the Movant's judicial estoppel arguments.

*judicata* principles to support this position.

The *Rooker-Feldman* doctrine is derived from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), which together stand for the proposition that lower federal courts lack subject matter jurisdiction to sit in direct appellate review of state court judgments. The *Rooker-Feldman* doctrine is a narrow jurisdictional doctrine which is distinct from federal preclusion doctrines. *See McKithen v. Brown*, 481 F.3d 89, 96-97 (2d Cir. 2007) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), and *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). In essence, the doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Exxon Mobil*, 544 U.S. at 283.

The Second Circuit has delineated four elements that must be satisfied in order for *Rooker-Feldman* to apply:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain [ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment [ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"-i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

*McKithen*, 481 F.3d at 97 (internal citation omitted and alteration in original) (quoting *Hoblock*,

422 F.3d at 85).

In a case with facts similar to the instant case, Chief Judge Craig applied the *Rooker-Feldman* doctrine to overrule a debtor's objection to a motion for relief from the automatic stay. *See In re Ward*, 423 B.R. 22 (Bankr. E.D.N.Y. 2010).  In *In re Ward*, a foreclosure sale was conducted prior to the filing of the bankruptcy petition.  When the successful purchaser sought relief from stay in the bankruptcy case to proceed to evict the debtor, the debtor opposed the motion.  The debtor argued that the foreclosure judgment was flawed because "no original note was produced", "the mortgage was rescinded", "the plaintiff in the action doesn't exist" or "was not a proper party to the foreclosure action", and that "everything was done irregularly and underneath [the] table."  *In re Ward*, 423 B.R. at 27.  Chief Judge Craig overruled the debtor's opposition and found that each of the elements of the *Rooker-Feldman* doctrine were satisfied:

> The *Rooker-Feldman* doctrine applies in this case because the Debtor lost in the state court foreclosure action, the Foreclosure Judgment was rendered before the Debtor commenced this case, and the Debtor seeks this Court's review of the Foreclosure Judgment in the context of her opposition to the Purchaser's motion for relief from the automatic stay. The injury complained of, *i.e.*, the foreclosure sale to the Purchaser, was "caused by" the Foreclosure Judgment because "the foreclosure [sale] would not have occurred but-for" the Foreclosure Judgment. Accordingly, the *Rooker-Feldman* doctrine does not permit this Court to disregard the Foreclosure Judgment.

*In re Ward*, 423 B.R. at 28 (citations omitted and alteration in original).

In the instant case, the Debtor argues that the *Rooker-Feldman* doctrine does not apply because the Judgment of Foreclosure was entered on default, not on the merits.  She also argues that *Rooker-Feldman* should not apply because she is alleging that the Judgment of Foreclosure was procured by fraud in that the MERS system of mortgage assignments was fraudulent in nature or void.  However, this Court is not aware of any exception to the *Rooker-Feldman*

doctrine for default judgments, or judgments procured by fraud and the Court will not read those exceptions into the rule. *See Salem v. Paroli*, 260 B.R. 246, 254 (S.D.N.Y. 2001) (applying *Rooker-Feldman* to preclude review of state court default judgment); *see also Lombard v. Lombard*, No. 00-CIV-6703 (SAS), 2001 WL 548725, at *3-4 (S.D.N.Y. May 23, 2001) (applying *Rooker-Feldman* to preclude review of stipulation of settlement executed in connection with state court proceeding even though applicant argued that the stipulation should be declared null and void because he was under duress at the time it was executed).

The Debtor also argues that *Rooker-Feldman* does not apply in this case because she is not asking this Court to set aside the Judgment of Foreclosure, but rather is asking this Court to make a determination as to the Movant's standing to seek relief from stay. The Debtor argues that notwithstanding the *Rooker-Feldman* doctrine, the bankruptcy court must have the ability to determine the standing of the parties before it.

Although the Debtor says she is not seeking affirmative relief from this Court, the net effect of upholding the Debtor's jurisdictional objection in this case would be to deny U.S. Bank rights that were lawfully granted to U.S. Bank by the state court. This would be tantamount to a reversal which is prohibited by *Rooker-Feldman*.

Even if *Rooker-Feldman* were found not to apply to this determination, the Court still would find that the Debtor is precluded from questioning U.S. Bank's standing as a secured creditor under the doctrine of *res judicata*. The state court already has determined that U.S. Bank is a secured creditor with standing to foreclose and this Court cannot alter that determination in order to deny U.S. Bank standing to seek relief from the automatic stay.

The doctrine of *res judicata* is grounded in the Full Faith and Credit Clause of the United

Case 8:10-cv-03111-PA   Document 30-1   Filed 02/25/11   Page 18 of 74   Page ID#:
327
Case 1:10-cv-03111-reg   Doc 41   Filed 02/10/11   Entered 02/10/11 14:13:10

States Constitution.  U.S. Const. art. IV, § 1.  It prevents a party from re-litigating any issue *or*

*defense* that was decided by a court of competent jurisdiction and which could have been raised

or decided in the prior action.  *See Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (applying

New York preclusion rules); *Swiatkowski v. Citibank*, No. 10-CV-114, 2010 WL 3951212, at

*14 (E.D.N.Y. Oct. 7, 2010) (citing *Waldman v. Vill. of Kiryas Joel*, 39 F.Supp.2d 370, 377

(S.D.N.Y. 1999)).  *Res judicata* applies to judgments that were obtained by default, *see Kelleran*

*v. Andrijevic*, 825 F.2d 692, 694-95 (2d Cir. 1987), but it may not apply if the judgment was

obtained by *extrinsic* fraud or collusion.  "Extrinsic fraud involves the parties' 'opportunity to

have a full and fair hearing,' while intrinsic fraud, on the other hand, involves the 'underlying

issue in the original lawsuit.'"  *In re Ward*, 423 B.R. at 29.  The Debtor's assertions that the

MERS system of assignments may have been fraudulent is more appropriately deemed an

*intrinsic* fraud argument.  The Debtor has not alleged any *extrinsic* fraud in the procurement of

the Judgment of Foreclosure which prevented a full and fair hearing before the state court.

As a result, the Court finds that the Judgment of Foreclosure alone is sufficient evidence

of the Movant's status as a secured creditor and therefore its standing to seek relief from the

automatic stay.  On that basis, and because the Movant has established grounds for relief from

stay under Section 362(d), the Motion will be granted.

### MERS

Because of the broad applicability of the issues raised in this case the Court believes that

it is appropriate to set forth its analysis on the issue of whether the Movant, absent the Judgment

of Foreclosure, would have standing to bring the instant motion.  Specifically MERS's role in

the ownership and transfer of real property notes and mortgages is at issue in dozens of cases before this Court. As a result, the Court has deferred ruling on motions for relief from stay where the movants' standing may be affected by MERS's participation in the transfer of the real property notes and mortgages. In the instant case, the issues were resolved under the *Rooker-Feldman* doctrine and the application of *res judicata*. Most, if not all, of the remainder of the "MERS cases" before the Court cannot be resolved on the same basis. For that reason, and because MERS has intervened in this proceeding arguing that the validity of MERS assignments directly affects its business model and will have a significant impact on the national mortgage industry, this Court will give a reasoned opinion as to the Movant's standing to seek relief from the stay and how that standing is affected by the fact that U.S. Bank acquired its rights in the Mortgage by way of assignment from MERS.

### Standing to seek relief from the automatic stay

The Debtor has challenged the Movant's standing to seek relief from the automatic stay. Standing is a threshold issue for a court to resolve. Section 362(d) states that relief from stay may be granted "[o]n request of a party in interest and after notice and a hearing." 11 U.S.C. § 362(d). The term "party in interest" is not defined in the Bankruptcy Code, however the Court of Appeals for the Second Circuit has stated that "[g]enerally the 'real party in interest' is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." *See Roslyn Savings Bank v. Comcoach (In re Comcoach)*, 698 F.2d 571, 573 (2d Cir. 1983). The legislative history of Section 362 "suggests that, notwithstanding the use of the term 'party in interest', it is only creditors who may obtain relief

from the automatic stay." *Id.* at 573-74. (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 175, reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 6136); *see also Greg Restaurant Equip. And Supplies v. Toar Train P'ship (In re Toar Train P'ship)*, 15 B.R. 401, 402 (Bankr. D. Vt.1981) (finding that a judgment creditor of the debtor was not a "party in interest" because the judgment creditor was not itself a direct creditor of the bankrupt).

Using the standard established by the Second Circuit, this Court must determine whether the Movant is the "one who, under applicable substantive law, has the legal right" to enforce the subject Note and Mortgage, and is therefore a "creditor" of this Debtor. *See In re Toar*, 15 B.R. at 402; *see also In re Mims*, 438 B.R. 52, 55 (Bankr. S.D.N.Y. 2010)*.* The Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief . . . ." 11 U.S.C. § 101(10). "Claim" is defined as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . ." 11 U.S.C. § 101(5)(A). In the context of a lift stay motion where the movant is seeking to commence or continue with an action to foreclose a mortgage against real property, the movant must show that it is a "party in interest" by showing that it is a creditor with a security interest in the subject real property. *See Mims*, 438 B.R. at 57 (finding that as movant "failed to prove it owns the Note, it has failed to establish that it has standing to pursue its state law remedies with regard to the Mortgage and Property"). *Cf. Brown Bark I L.P. v. Ebersole (In re Ebersole)*, 440 B.R. 690, 694 (Bankr. W.D. Va. 2010) (finding that movant seeking relief from stay must prove that it is the holder of the subject note in order to establish a 'colorable claim' which would establish standing to seek relief from stay).

*Noteholder status*

In the Motion, the Movant asserts U.S. Bank's status as the "holder" of the Mortgage. However, in order to have standing to seek relief from stay, Movant, which acts as the representative of U.S. Bank, must show that U.S. Bank holds both the Mortgage and the Note. *Mims*, 438 B.R. at 56. Although the Motion does not explicitly state that U.S. Bank is the holder of the Note, it is implicit in the Motion and the arguments presented by the Movant at the hearing. However, the record demonstrates that the Movant has produced no evidence, documentary or otherwise, that U.S. Bank is the rightful holder of the Note. Movant's reliance on the fact that U.S. Bank's noteholder status has not been challenged thus far does not alter or diminish the Movant's burden to show that it is the holder of the Note as well as the Mortgage.

Under New York law, Movant can prove that U.S. Bank is the holder of the Note by providing the Court with proof of a written assignment of the Note, or by demonstrating that U.S. Bank has physical possession of the Note endorsed over to it. *See, eg.*, *LaSalle Bank N.A. v. Lamy*, 824 N.Y.S.2d 769, 2006 WL 2251721, at *1 (N.Y. Sup. Ct. Aug. 7, 2006). The only written assignment presented to the Court is not an assignment of the Note but rather an "Assignment of Mortgage" which contains a vague reference to the Note. Tagged to the end of the provisions which purport to assign the Mortgage, there is language in the Assignment stating "To Have and to Hold the said Mortgage *and Note*, and also the said property until the said Assignee forever, subject to the terms contained in said Mortgage *and Note*." (Assignment of Mortgage (emphasis added)). Not only is the language vague and insufficient to prove an intent to assign the Note, but MERS is not a party to the Note and the record is barren of any representation that MERS, the purported assignee, had any authority to take any action with

Page 21 of  37

respect to the Note.  Therefore, the Court finds that the Assignment of Mortgage is not sufficient to establish an effective assignment of the Note.

By MERS's own account, it took no part in the assignment of the Note in this case, but merely provided a database which allowed its members to electronically self-report transfers of the Note.  MERS does not confirm that the Note was properly transferred or in fact whether anyone including agents of MERS had or have physical possession of the Note.  What remains undisputed is that MERS did not have any rights with respect to the Note and other than as described above, MERS played no role in the transfer of the Note.

Absent a showing of a valid assignment of the Note, Movant can demonstrate that U.S. Bank is the holder of the Note if it can show that U.S. Bank has physical possession of the Note endorsed to its name.  *See In re Mims*, 423 B.R. at 56-57.  According to the evidence presented in this matter the manner in which the MERS system is structured provides that, "[w]hen the beneficial interest in a loan is sold, the promissory note is [] transferred by an endorsement and delivery from the buyer to the seller [sic], but MERS Members are obligated to update the MERS® System to reflect the change in ownership of the promissory note. . . ." (MERS Supplemental Memorandum of Law at 6).  However, there is nothing in the record to prove that the Note in this case was transferred according to the processes described above other than MERS's representation that its computer database reflects that the Note was transferred to U.S. Bank.  The Court has no evidentiary basis to find that the Note was endorsed to U.S. Bank or that U.S. Bank has physical possession of the Note.  Therefore, the Court finds that Movant has not satisfied its burden of showing that U.S. Bank, the party on whose behalf Movant seeks relief from stay, is the holder of the Note.

### *Mortgagee status*

The Movant's failure to show that U.S. Bank holds the Note should be fatal to the

Movant's standing.  However, even if the Movant could show that U.S. Bank is the holder of the

Note, it still would have to establish that it holds the Mortgage in order to prove that it is a

secured creditor with standing to bring this Motion before this Court.  The Movant urges the

Court to adhere to the adage that a mortgage necessarily follows the same path as the note for

which it stands as collateral.  *See Wells Fargo Bank, N.A. v. Perry*, 875 N.Y.S.2d 853, 856 (N.Y.

Sup. Ct. 2009).  In simple terms the Movant relies on the argument that a note and mortgage are

inseparable.  *See Carpenter v. Longan*, 83 U.S. 271, 274 (1872).  While it is generally true that a

mortgage travels a parallel path with its corresponding debt obligation, the parties in this case

have adopted a process which by its very terms alters this practice where mortgages are held by

MERS as "mortgagee of record."  By MERS's own account, the Note in this case was

transferred among its members, while the Mortgage remained in MERS's name.  MERS admits

that the very  foundation of its business model as described herein requires that the Note and

Mortgage travel on divergent paths.  Because the Note and Mortgage did not travel together,

Movant must prove not only that it is acting on behalf of a valid assignee of the Note, but also

that it is acting on behalf of the valid assignee of the Mortgage.[5]

---

[5]    MERS argues that notes and mortgages processed through the MERS System are never "separated" because beneficial ownership of the notes and mortgages are always held by the same entity.  The Court will not address that issue in this Decision, but leaves open the issue as to whether  mortgages  processed through the MERS system are properly perfected and valid liens.  *See Carpenter v. Longan*, 83 U.S. at 274 (finding that an assignment of the mortgage without the note is a nullity); *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 166-67 (Kan. 2009) ("[I]n the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable").

MERS asserts that its right to assign the Mortgage to U.S. Bank in this case, and in what it estimates to be literally millions of other cases, stems from three sources: the Mortgage documents; the MERS membership agreement; and state law.  In order to provide some context to this discussion, the Court will begin its analysis with an overview of mortgage and loan processing within the MERS network of lenders as set forth in the record of this case.

In the most common residential lending scenario, there are two parties to a real property mortgage – a mortgagee, *i.e.*, a lender, and a mortgagor, *i.e.*, a borrower.  With some nuances and allowances for the needs of modern finance this model has been followed for hundreds of years.  The MERS business plan, as envisioned and implemented by lenders and others involved in what has become known as the mortgage finance industry, is based in large part on amending this traditional model and introducing a third party into the equation.  MERS is, in fact, neither a borrower nor a lender, but rather purports to be both "mortgagee of record" and a "nominee" for the mortgagee.  MERS was created to alleviate problems created by, what was determined by the financial community to be, slow and burdensome recording processes adopted by virtually every state and locality.  In effect the MERS system was designed to circumvent these procedures.  MERS, as envisioned by its originators, operates as a replacement for our traditional system of public recordation of mortgages.

Caselaw and commentary addressing MERS's role in the mortgage recording and foreclosure process abound.  *See* Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359 (2010).  In a 2006 published opinion, the New York Court of Appeals described MERS system as follows:

> In 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages.

Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system.

The initial MERS mortgage is recorded in the County Clerk's office with 'Mortgage Electronic Registration Systems, Inc.' named as the lender's nominee or mortgagee of record on the instrument. During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS's private system. In the MERS system, the mortgagor is notified of transfers of servicing rights pursuant to the Truth in Lending Act, but not necessarily of assignments of the beneficial interest in the mortgage.

*Merscorp, Inc., v. Romaine*, 8 N.Y.3d 90 (N.Y. 2006) (footnotes omitted).

In the words of MERS's legal counsel, "[t]he essence of MERS' business is to hold legal title to beneficial interests under mortgages and deeds of trust in the land records. The MERS® System is designed to allow its members, which include originators, lenders, servicers, and investors, to accurately and efficiently track transfers of servicing rights and beneficial ownership." (MERS Memorandum of Law at 5). The MERS® System ". . . eliminate[s] the need for frequent, recorded assignments of subsequent transfers." (MERS Supplemental Memorandum of Law at 4). "Prior to MERS, every time a loan secured by a mortgage was sold, the assignee would need to record the assignment to protect the security interest. If a servicing company serviced the loan and the servicing rights were sold, – an event that could occur multiple times during the life of a single mortgage loan – multiple assignments were recorded to ensure that the proper servicer appeared in the land records in the County Clerk's office." (MERS Supplemental Memorandum of Law at 4-5).

"When the beneficial interest in a loan is sold, the promissory note is still transferred by

an endorsement and delivery from the buyer to the seller, but MERS Members are obligated to update the MERS® System to reflect the change in ownership of the promissory note. . . . So long as the sale of the note involves a MERS Member, MERS remains the named mortgagee of record, and continues to act as the mortgagee, as the nominee for the new beneficial owner of the note (and MERS' Member). The seller of the note does not and need not assign the mortgage because under the terms of that security instrument, MERS remains the holder of title to the mortgage, that is, the mortgagee, as the nominee for the purchaser of the note, who is then the lender's successor and/or assign." (MERS Supplemental Memorandum of Law at 6). "At all times during this process, the original mortgage or an assignment of the mortgage to MERS remains of record in the public land records where the security real estate is located, providing notice of MERS's disclosed role as the agent for the MERS Member lender and the lender's successors and assigns." (Declaration of William C. Hultman, ¶9).

MERS asserts that it has authority to act as agent for each and every MERS member which claims ownership of a note and mortgage registered in its system. This authority is based not in the statutes or caselaw, but rather derives from the terms and conditions of a MERS membership agreement. Those terms and conditions provide that "MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time." (Declaration of William C. Hultman, ¶5). MERS "holds the legal title to the mortgage and acts as the agent or nominee for the MERS Member lender, or owner of the mortgage loan." (Declaration of William C. Hultman, ¶6). According to MERS, it is the "intent of the parties . . . for MERS to serve as the *common nominee or agent* for MERS Member lenders and their

successors and assigns." (MERS Supplemental Memorandum of Law at 19) (emphasis added by

the Court). "Because MERS holds the mortgage lien for the lender who may freely transfer its

interest in the note, without the need for a recorded assignment document in the land records,

MERS holds the mortgage lien for *any intended transferee of the note*." (MERS Supplemental

Memorandum of Law at 15) (emphasis added by the Court). If a MERS member subsequently

assigns the note to a non-MERS member, or if the MERS member which holds the note decides

to foreclose, only then is an assignment of the mortgage from MERS to the noteholder

documented and recorded in the public land records where the property is located. (Declaration

of William C. Hultman, ¶12).

Before commenting on the legal effect of the MERS membership rules or the alleged

"common agency" agreement created among MERS members, the Court will review the relevant

portions of the documents presented in this case to evaluate whether the documentation, on its

face, is sufficient to prove a valid assignment of the Mortgage to U.S. Bank.


### The Mortgage

First Franklin is the "Lender" named in the Mortgage. With reference to MERS's role in

the transaction, the Mortgage states:

> MERS is a separate corporation that is *acting solely as a nominee for Lender and
> Lender's successors and assigns*. MERS is organized and existing under the laws
> of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
> MI 48501-2026, tel. (888) 679 MERS. **FOR PURPOSES OF RECORDING
> THIS MORTGAGE, MERS IS THE *MORTGAGEE OF RECORD*.**

(Mortgage at 1 (emphasis added by the Court)).

The Mortgage also purports to contain a transfer to MERS of the Borrower's (*i.e.*, the

Debtor's) rights in the subject Property as follows:

### BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

[The Borrower] mortgage[s], grant[s] and convey[s] the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument.  This means that, by signing this Security Instrument, [the Borrower is] giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgage on real property.  [The Borrower is] giving Lender these rights to protect Lender from possible losses that might result if [the Borrower] fail[s] to [comply with certain obligations under the Security Instrument and accompanying Note.]

[The Borrower] understand[s] and agree[s] that MERS holds only legal title to the rights granted by [the Borrower] in this Security Instrument, but, if necessary to comply with law or custom, *MERS (as nominee for Lender and Lenders's successors and assigns) has the right: (A) to exercise any or all those rights, including, but not limited to, the right to foreclose and sell the Property; and (B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.*

[The Borrower gives] MERS (solely as nominee for Lender and Lender's successors in interest), rights in the Property . . .

(Mortgage at 3) (emphasis added).

The Assignment of Mortgage references the Mortgage and defines the "Assignor" as

"'Mers' Mortgage Electronic Registration Systems, Inc., 2150 North First Street, San Jose, California 95131, *as nominee for First Franklin*, a division of National City Bank of IN, 2150 North First Street San Jose, California 95153." (Emphasis added by the Court).  The "Assignee" is U.S. Bank.

Premised on the foregoing documentation, MERS argues that it had full authority to validly execute the Assignment of Mortgage to U.S. Bank on February 1, 2008, and that as of the date the foreclosure proceeding was commenced U.S. Bank held both the Note and the Mortgage.  However, without more, this Court finds that MERS's "nominee" status and the

rights bestowed upon MERS within the Mortgage itself, are insufficient to empower MERS to effectuate a valid assignment of mortgage.

There are several published New York state trial level decisions holding that the status of "nominee" or "mortgagee of record" bestowed upon MERS in the mortgage documents, by itself, does not empower MERS to effectuate an assignment of the mortgage.  These cases hold that MERS may not validly assign a mortgage based on its nominee status, absent some evidence of specific authority to assign the mortgage.  *See Bank of New York v. Mulligan,* No. 29399/07, 2010 WL 3339452, at *7 (N.Y. Sup. Ct. Aug. 25, 2010); *One West Bank, F.S.B. v. Drayton*, 910 N.Y.S.2d 857, 871 (N.Y. Sup. Ct. 2010); *Bank of New York v. Alderazi*, 900 N.Y.S.2d 821, 824 (N.Y. Sup. Ct. 2010) (the "party who claims to be the agent of another bears the burden of proving the agency relationship by a preponderance of the evidence"); *HSBC Bank USA v. Yeasmin*, No. 34142/07, 2010 WL 2089273, at *3 (N.Y. Sup. Ct. May 24, 2010);  *HSBC Bank USA v. Vasquez,* No. 37410/07, 2009 WL 2581672, at *3 (N.Y. Sup. Ct. Aug. 21, 2010); *LaSalle Bank N.A. v. Lamy*, 824 N.Y.S.2d 769, 2006 WL 2251721, at *2 (N.Y. Sup. Ct. Aug. 7, 2006) ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee.").  *See also MERS v. Saunders*, 2 A.3d 289, 295 (Me. 2010) ("MERS's only right is to record the mortgage.  Its designation as the 'mortgagee of record' in the document does not change or expand that right...").  *But see US Bank, N.A. v. Flynn*, 897 N.Y.S.2d 855 (N.Y. Sup. Ct. 2010) (finding that MERS's "nominee" status and the mortgage documents give MERS authority to assign); *Crum v. LaSalle Bank, N.A.*, No. 2080110, 2009 WL 2986655, at *3 (Ala. Civ. App., Sept. 18, 2009) (finding MERS validly assigned its and the lender's rights to

assignee); *Blau v. America's Servicing Company, et al.*, No. CV-08-773-PHX-MHM, 2009 WL 3174823, at *8 (D. Ariz. Sept. 29, 2009) (finding that assignee of MERS had standing to foreclose).

In *LaSalle Bank, N.A. v. Bouloute,* No. 41583/07, 2010 WL 3359552, at *2 (N.Y. Sup. Aug. 26, 2010), the court analyzed the relationship between MERS and the original lender and concluded that a nominee possesses few or no legally enforceable rights beyond those of a principal whom the nominee serves. The court stated:

> MERS . . . recorded the subject mortgage as "nominee" for FFFC. The word "nominee" is defined as "[a] person designated to act in place of another, usu. in a very limited way" or "[a] party who holds bare legal title for the benefit of others." (Black's Law Dictionary 1076 [8th ed 2004] ). "This definition suggests that a nominee possesses few or no legally enforceable rights beyond those of a principal whom the nominee serves." (*Landmark National Bank v. Kesler*, 289 Kan 528, 538 [2009] ). The Supreme Court of Kansas, in *Landmark National Bank*, 289 Kan at 539, observed that:
>
> > The legal status of a nominee, then, depends on the context of the relationship of the nominee to its principal. Various courts have interpreted the relationship of MERS and the lender as an agency relationship. See *In re Sheridan*, 2009 WL631355, at *4 (Bankr. D. Idaho, March 12, 2009) (MERS "acts not on its own account. Its capacity is representative."); *Mortgage Elec. Registrations Systems, Inc. v. Southwest*, 2009 Ark. 152 ----, 301 SW3d 1, 2009 WL 723182 (March 19, 2009) ("MERS, by the terms of the deed of trust, and its own stated purposes, was the lender's agent"); *La Salle Nat. Bank v. Lamy*, 12 Misc.3d 1191[A], at *2 [Sup Ct, Suffolk County 2006] ) ... ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee.").

*LaSalle Bank, N.A. v. Bouloute,* No. 41583/07, 2010 WL 3359552, at *2; *see also Bank of New York v. Alderazi*, 900 N.Y.S.2d 821, 823 (N.Y. Sup. Ct. 2010) (nominee is "'[a] person designated to act in place of another, usually in a very limited way.'") (quoting Black's Law

Dictionary)).

In *LaSalle Bank, N.A. v. Bouloute* the court concluded that MERS must have some evidence of authority to assign the mortgage in order for an assignment of a mortgage by MERS to be effective. Evidence of MERS's authority to assign could be by way of a power of attorney or some other document executed by the original lender. *See Bouloute*, 2010 WL 3359552, at *1; *Alderazi*, 900 N.Y.S.2d at 823 ("'To have a proper assignment of a mortgage by an authorized agent, a power of attorney is necessary to demonstrate how the agent is vested with the authority to assign the mortgage.'") (quoting *HSBC Bank USA, NA v. Yeasmin*, 866 N.Y.S.2d 92 (N.Y. Sup. Ct. 2008)).

Other than naming MERS as "nominee", the Mortgage also provides that the Borrower transfers legal title to the subject property to MERS, as the Lender's nominee, and acknowledges MERS's rights to exercise certain of the Lender's rights under state law. This too, is insufficient to bestow any authority upon MERS to assign the mortgage. In *Bank of New York v. Alderazi*, the court found "[t]he fact that the borrower acknowledged and consented to MERS acting as nominee of the lender has no bearing on what specific powers and authority the lender granted MERS." *Alderazi*, 900 N.Y.S.2d at 824. Even if it did bestow some authority upon MERS, the court in *Alderazi* found that the mortgage did not convey the specific right to assign the mortgage.

The Court agrees with the reasoning and the analysis in *Bouloute* and *Alderazi*, and the other cases cited herein and finds that the Mortgage, by naming MERS a "nominee," and/or "mortgagee of record" did not bestow authority upon MERS to assign the Mortgage.

### *The MERS membership rules*

According to MERS, in addition to the alleged authority granted to it in the Mortgage itself, the documentation of the Assignment of Mortgage comports with all the legal requirements of agency when read in conjunction with the overall MERS System. MERS's argument requires that this Court disregard the specific words of the Assignment of Mortgage or, at the very least, interpret the Assignment in light of the overall MERS System of tracking the beneficial interests in mortgage securities. MERS urges the Court to look beyond the four corners of the Mortgage and take into consideration the agency relationship created by the agreements entered into by the lenders participating in the MERS System, including their agreement to be bound by the terms and conditions of membership.

MERS has asserted that each of its member/lenders agrees to appoint MERS to act as its agent. In this particular case, the Treasurer of MERS, William C. Hultman, declared under penalty of perjury that "pursuant to the MERS's Rules of Membership, Rule 2, Section 5. . . First Franklin appointed MERS to act as its agent to hold the Mortgage as nominee on First Franklin's behalf, and on behalf of First Franklin's successors and assigns." (Affirmation of William C. Hultman, ¶7). However, Section 5 of Rule 2, which was attached to the Hultman Affirmation as an exhibit, contains no explicit reference to the creation of an agency or nominee relationship. Consistent with this failure to explicitly refer to the creation of an agency agreement, the rules of membership do not grant any clear authority to MERS to take any action with respect to the mortgages held by MERS members, including but not limited to executing assignments. The rules of membership do require that MERS members name MERS as "mortgagee of record" and that MERS appears in the public land records as such. Section 6 of Rule 2 states that "MERS

Case 8:10-cv-77338-reg   Doc 41   Filed 02/10/11   Entered 02/10/11 14:13:10
Case 1:10-cv-03111-PA   Document 30-1   Filed 02/25/11   Page 33 of 74   Page ID#:
342

shall at all times comply with the instructions of the holder of mortgage loan promissory notes,"
but this does not confer any specific power or authority to MERS.

### State law

Under New York agency laws, an agency relationship can be created by a "manifestation
of consent by one person to another that the other shall act on his behalf and subject to his
control, and the consent by the other to act." *Meisel v. Grunberg*, 651 F.Supp.2d 98, 110
(S.D.N.Y. 2009) (citing *N.Y. Marine & Gen. Ins. Co. v. Tradeline, L.L.C.*, 266 F.3d 112, 122 (2d
Cir.2001)).

> 'Such authority to act for a principal may be actual or apparent.' . . . Actual
> authority arises from a direct manifestation of consent from the principal to the
> agent. . . . . The existence of actual authority 'depends upon the actual interaction
> between the putative principal and agent, not on any perception a third party may
> have of the relationship.'

*Meisel v. Grunberg*, 651 F.Supp.2d at 110 (citations omitted).

Because MERS's members, the beneficial noteholders, purported to bestow upon MERS
interests in real property sufficient to authorize the assignments of mortgage, the alleged agency
relationship must be committed to writing by application of the statute of frauds.  Section 5-
703(2) of the New York General Obligations Law states that:

> An estate or interest in real property, other than a lease for a term not exceeding
> one year, or any trust or power, over or concerning real property, or in any
> manner relating thereto, cannot be created, granted, assigned, surrendered or
> declared, unless by act or operation of law, or by a deed or conveyance in writing,
> subscribed by the person creating, granting, assigning, surrendering or declaring
> the same, *or by his lawful agent, thereunto authorized by writing*.

*See* N.Y. Gen. Oblig. Law § 5-703(1) (McKinney 2011); *Republic of Benin v. Mezei*, No. 06 Civ.
870 (JGK), 2010 WL 3564270, at *3 (S.D.N.Y. Sept. 9, 2010); *Urgo v. Patel*, 746 N.Y.S.2d 733

Case 8:10-cv-77338-reg   Doc 41   Filed 02/10/11   Entered 02/10/11 14:13:10
Case 1:10-cv-03111-PA   Document 30-1   Filed 02/25/11   Page 34 of 74   Page ID#:
343

(N.Y. App. Div. 2002) (finding that unwritten apparent authority is insufficient to satisfy the statute of frauds) (citing *Diocese of Buffalo v. McCarthy*, 91 A.D.2d 1210 (4th Dept. 1983)); *see also* N.Y. Gen. Oblig. Law § 5-1501 (McKinney 2011) ("'agent' means a person granted authority to act as attorney-in-fact for the principal under a power of attorney. . ."). MERS asks this Court to liberally interpret the laws of agency and find that an agency agreement may take any form "desired by the parties concerned." However, this does not free MERS from the constraints of applicable agency laws.

The Court finds that the record of this case is insufficient to prove that an agency relationship exists under the laws of the state of New York between MERS and its members. According to MERS, the principal/agent relationship among itself and its members is created by the MERS rules of membership and terms and conditions, as well as the Mortgage itself. However, none of the documents expressly creates an agency relationship or even mentions the word "agency." MERS would have this Court cobble together the documents and draw inferences from the words contained in those documents. For example, MERS argues that its agent status can be found in the Mortgage which states that MERS is a "nominee" and a "mortgagee of record." However, the fact that MERS is named "nominee" in the Mortgage is not dispositive of the existence of an agency relationship and does not, in and of itself, give MERS any "authority to act." *See Steinbeck v. Steinbeck Heritage Foundation*, No. 09-18360cv, 2010 WL 3995982, at *2 (2d Cir. Oct. 13, 2010) (finding that use of the words "attorney in fact" in documents can constitute evidence of agency but finding that such labels are not dispositive); *MERS v. Saunders*, 2 A.3d 289, 295 (Me. 2010) (designation as the 'mortgagee of record' does not qualify MERS as a "mortgagee"). MERS also relies on its rules of membership as evidence

of the agency relationship.  However, the rules lack any specific mention of an agency

relationship, and do not bestow upon MERS any authority to act.  Rather, the rules are

ambiguous as to MERS's authority to take affirmative actions with respect to mortgages

registered on its system.

In addition to casting itself as nominee/agent, MERS seems to argue that its role as

"mortgagee of record" gives it the rights of a mortgagee in its own right.  MERS relies on the

definition of "mortgagee" in the New York Real Property Actions and Proceedings Law Section

1921 which states that a "mortgagee" *when used in the context of Section 1921*, means the

"current holder of the mortgage of record . . . or their agents, successors or assigns." N.Y. Real

Prop. Acts. L. § 1921 (McKinney 2011).  The provisions of Section 1921 relate solely to the

discharge of mortgages and the Court will not apply that definition beyond the provisions of that

section in order to find that MERS is a "mortgagee" with full authority to perform the duties of

mortgagee in its own right.  Aside from the inappropriate reliance upon the statutory definition

of "mortgagee," MERS's position that it can be both the mortgagee and an agent of the

mortgagee is absurd, at best.

Adding to this absurdity, it is notable in this case that the Assignment of Mortgage was

by MERS, *as nominee for First Franklin*, the original lender.  By the Movant's and MERS's

own admission, at the time the assignment was effectuated, First Franklin no longer held any

interest in the Note.  Both the Movant and MERS have represented to the Court that subsequent

to the origination of the loan, the Note was assigned, through the MERS tracking system, from

First Franklin to Aurora, and then from Aurora to U.S. Bank.  Accordingly, at the time that

MERS, *as nominee of First Franklin*, assigned the interest in the Mortgage to U.S. Bank, U.S.

Bank allegedly already held the Note and it was at U.S. Bank's direction, not First Franklin's, that the Mortgage was assigned to U.S. Bank.  Said another way, when MERS assigned the Mortgage to U.S. Bank on First Franklin's behalf, it took its direction from U.S. Bank, not First Franklin, to provide documentation of an assignment from an entity that no longer had any rights to the Note or the Mortgage.  The documentation provided to the Court in this case (and the Court has no reason to believe that any further documentation exists), is stunningly *inconsistent* with what the parties define as the facts of this case.

However, even if MERS had assigned the Mortgage acting on behalf of the entity which held the Note at the time of the assignment, this Court finds that MERS did not have authority, as "nominee" or agent, to assign the Mortgage absent a showing that it was given specific written directions by its principal.

This Court finds that MERS's theory that it can act as a "common agent" for undisclosed principals is not support by the law.  The relationship between MERS and its lenders and its distortion of its alleged "nominee" status was appropriately described by the Supreme Court of Kansas as follows: "The parties appear to have defined the word [nominee] in much the same way that the blind men of Indian legend described an elephant – their description depended on which part they were touching at any given time."  *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 166-67 (Kan. 2010).

### Conclusion

For all of the foregoing reasons, the Court finds that the Motion in this case should be granted.  However, in all future cases which involve MERS, the moving party must show that it

validly holds both the mortgage and the underlying note in order to prove standing before this Court.

Dated: Central Islip, New York
       February 10, 2011                              _/s/ Robert E. Grossman_
                                                     Hon. Robert E. Grossman
                                                     United States Bankruptcy Judge

Case 8-10-77338-reg Doc 41-1 Filed 02/10/11 Entered 02/10/11 14:13:10

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

                                        Case No. 810-77338-reg

FERREL L. AGARD,

                                        Chapter 7

                         Debtor.
-----------------------------------------------------------------x

## <u>MEMORANDUM DECISION</u>

Before the Court is a motion (the "Motion") seeking relief from the automatic stay

pursuant to 11 U.S.C. § 362(d)(1) and (2), to foreclose on a secured interest in the Debtor's real

property located in Westbury, New York (the "Property"). The movant is Select Portfolio

Servicing, Inc. ("Select Portfolio" or "Movant"), as servicer for U.S. Bank National Association,

as Trustee for First Franklin Mortgage Loan Trust 2006-FF12, Mortgage Pass-Through

Certificates, Series 2006-FF12 ("U.S. Bank"). The Debtor filed limited opposition to the Motion

contesting the Movant's standing to seek relief from stay. The Debtor argues that the only

interest U.S. Bank holds in the underlying mortgage was received by way of an assignment from

the Mortgage Electronic Registration System a/k/a MERS, as a "nominee" for the original

lender. The Debtor's argument raises a fundamental question as to whether MERS had the legal

authority to assign a valid and enforceable interest in the subject mortgage. Because U.S. Bank's

rights can be no greater than the rights as transferred by its assignor – MERS – the Debtor argues

that the Movant, acting on behalf of U.S. Bank, has failed to establish that it holds an

enforceable

right against the Property.[1]  The Movant's initial response to the Debtor's opposition was that MERS's authority to assign the mortgage to U.S. Bank is derived from the mortgage itself which allegedly grants to MERS its status as both "nominee" of the mortgagee and "mortgagee of record."  The Movant later supplemented its papers taking the position that U.S. Bank is a creditor with standing to seek relief from stay by virtue of a judgment of foreclosure and sale entered in its favor by the state court prior to the filing of the bankruptcy.  The Movant argues that the judgment of foreclosure is a final adjudication as to U.S. Bank's status as a secured creditor and therefore the *Rooker-Feldman* doctrine prohibits this Court from looking behind the judgment and questioning whether U.S. Bank has proper standing before this Court by virtue of a valid assignment of the mortgage from MERS.

The Court received extensive briefing and oral argument from MERS, as an intervenor in these proceedings which go beyond the arguments presented by the Movant.  In addition to the rights created by the mortgage documents themselves, MERS argues that the terms of its membership agreement with the original lender and its successors in interest, as well as New York state agency laws, give MERS the authority to assign the mortgage.  MERS argues that it holds legal title to mortgages for its member/lenders as both "nominee" and "mortgagee of

---

[1]     The Debtor also questions whether Select Portfolio has the authority and the standing to seek relief from the automatic stay.  The Movant argues that Select Portfolio has standing to bring the Motion based upon its status as "servicer" of the Mortgage, and attaches an affidavit of a vice president of Select Portfolio attesting to that servicing relationship. Caselaw has established that a mortgage servicer has standing to seek relief from the automatic stay as a party in interest.  *See, e.g.*, *Greer v. O'Dell*, 305 F.3d 1297 (11th Cir. 2002); *In re Woodberry*, 383 B.R. 373 (Bankr. D.S.C. 2008).  This presumes, however, that the lender for whom the servicer acts validly holds the subject note and mortgage.  Thus, this Decision will focus on whether U.S. Bank validly holds the subject note and mortgage.

record." As such, it argues that any member/lender which holds a note secured by real property, that assigns that note to another member by way of entry into the MERS database, need not also assign the mortgage because legal title to the mortgage remains in the name of MERS, as agent for any member/lender which holds the corresponding note. MERS's position is that if a MERS member directs it to provide a written assignment of the mortgage, MERS has the legal authority, as an agent for each of its members, to assign mortgages to the member/lender currently holding the note as reflected in the MERS database.

For the reasons that follow, the Debtor's objection to the Motion is overruled and the Motion is granted. The Debtor's objection is overruled by application of either the *Rooker-Feldman* doctrine, or *res judicata*. Under those doctrines, this Court must accept the state court judgment of foreclosure as evidence of U.S. Bank's status as a creditor secured by the Property. Such status is sufficient to establish the Movant's standing to seek relief from the automatic stay. The Motion is granted on the merits because the Movant has shown, and the Debtor has not disputed, sufficient basis to lift the stay under Section 362(d).

Although the Court is constrained in this case to give full force and effect to the state court judgment of foreclosure, there are numerous other cases before this Court which present identical issues with respect to MERS and in which there have been no prior dispositive state court decisions. This Court has deferred rulings on dozens of other motions for relief from stay pending the resolution of the issue of whether an entity which acquires its interests in a mortgage by way of assignment from MERS, as nominee, is a valid secured creditor with standing to seek relief from the automatic stay. It is for this reason that the Court's decision in this matter will address the issue of whether the Movant has established standing in this case notwithstanding the

existence of the foreclosure judgment.  The Court believes this analysis is necessary for the precedential effect it will have on other cases pending before this Court.

The Court recognizes that an adverse ruling regarding MERS's authority to assign mortgages or act on behalf of its member/lenders could have a significant impact on MERS and upon the lenders which do business with MERS throughout the United States.  However, the Court must resolve the instant matter by applying the laws as they exist today.  It is up to the legislative branch, if it chooses, to amend the current statutes to confer upon MERS the requisite authority to assign mortgages under its current business practices.  MERS and its partners made the decision to create and operate under a business model that was designed in large part to avoid the requirements of the traditional mortgage recording process.  This Court does not accept the argument that because MERS may be involved with 50% of all residential mortgages in the country, that is reason enough for this Court to turn a blind eye to the fact that this process does not comply with the law.

### *Facts*

#### *Procedural Background*

On September 20, 2010, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code.  In Schedule A to the petition, the Debtor lists a joint ownership interest in the Property described as follows:

> A "[s]ingle family home owned with son, deed in son's name since 2007; used as primary residence . . .. Debtor was on original deed and is liable on the mortgage, therefore has equitable title.  Debtor is in default of the mortgage with a principal balance of over $450,000.00.  The house is worth approximately $350,000.  A

Case 8:10-cv-03711-reg   Doc 41-1   Filed 02/10/11   Entered 02/10/11 14:13:10
Case 1:10-cv-03711-PA   Document 30-1   Filed 02/25/11   Page 42 of 74   Page ID#:
351

foreclosure sale was scheduled 9/21/10."

According to Schedule D, the Property is valued at $350,000 and is encumbered by a mortgage in the amount of $536,920.67 held by "SPS Select Portfolio Servicing."

On October 14, 2010, the Movant filed the Motion seeking relief from the automatic stay pursuant to 11 U.S.C. §362(d) to foreclose on the Property. The Motion does not state that a foreclosure proceeding had been commenced or that a judgment of foreclosure was granted prior to the filing of the bankruptcy petition. Nor does it mention that the Debtor holds only equitable title and does not hold legal title to the Property. Instead, Movant alleges that U.S. Bank is the "holder" of the Mortgage; that the last mortgage payment it received from the Debtor was applied to the July, 2008 payment; and that the Debtor has failed to make any post-petition payments to the Movant. Movant also asserts that as of September 24, 2010, the total indebtedness on the Note and Mortgage was $542,902.33 and the Debtor lists the value of the Property at $350,000 in its schedules. On that basis, Movant seeks entry of an order vacating the stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(2).

Annexed to the Motion are copies of the following documents:

• Adjustable Rate Note, dated June 9, 2006, executed by the Debtor as borrower and listing First Franklin a Division of Na. City Bank of In. ("First Franklin") as the lender ("Note");

• Balloon Note Addendum to the Note, dated June 9, 2006;

• Mortgage, dated June 9, 2006 executed by the Debtor and listing First Franklin as lender, and MERS as nominee for First Franklin and First Franklin's successors and assigns ("Mortgage");

• Adjustable Rate and Balloon Rider, dated June 9, 2006;

• Addendum to Promissory Note and Security Agreement executed by the Debtor; and

- Assignment of Mortgage, dated February 1, 2008, listing MERS as nominee for First Franklin as assignor, and the Movant, U.S. Bank National Association, as Trustee for First Franklin Mortgage Loan Trust 2006- FF12, Mortgage Pass-through Certificates, Series 2006-FF12, as assignee ("Assignment of Mortgage").

### The Arguments of the Parties

On October 27, 2010, the Debtor filed "limited opposition" to the Motion, alleging that the Movant lacks standing to seek the relief requested because MERS, the purported assignor to the Movant, did not have authority to assign the Mortgage and therefore the Movant cannot establish that it is a bona fide holder of a valid secured interest in the Property.

The Movant responded to the Debtor's limited opposition regarding MERS's authority to assign by referring to the provisions of the Mortgage which purport to create a "nominee" relationship between MERS and First Franklin.  In conclusory fashion, the Movant states that it therefore follows that MERS's standing to assign is based upon its nominee status.

On November 15, 2010, a hearing was held and the Court gave both the Debtor and Movant the opportunity to file supplemental briefs on the issues raised by the Debtor's limited opposition.

On December 8, 2010, the Movant filed a memorandum of law in support of the Motion arguing that this Court lacks jurisdiction to adjudicate the issue of whether MERS had authority to assign the Mortgage, and even assuming the Court did have jurisdiction to decide this issue, under New York law the MERS assignment was valid.  In support of its jurisdictional argument, the Movant advises the Court (for the first time) that a Judgement of Foreclosure and Sale ("Judgment of Foreclosure") was entered by the state court in favor of the Movant on November 24, 2008, and any judicial review of the Judgment of Foreclosure is barred by the doctrines of

*res judicata, Rooker-Feldman*, and judicial estoppel.[2]  The Movant argues that the Debtor had a full and fair opportunity to litigate these issues in state court, but chose to default, and cannot now challenge the state court's adjudication as to the Movant's status as a secured creditor or holder of the Note and Mortgage, or its standing to seek relief from the automatic stay in this Court.  The Movant also notes that the Debtor admits in her petition and schedules that she is liable on the Mortgage, that it was in default and the subject of a foreclosure sale, and thus judicial estoppel bars her arguments to the contrary.

In addition to its preclusion arguments, on the underlying merits of its position the Movant cites to caselaw holding that MERS assignments similar to the assignment in this case, are valid and enforceable.  *See U.S. Bank, N.A. v. Flynn*, 897 N.Y.S. 2d 855, 858 (N.Y. Sup. Ct. 2010); *Kiah v. Aurora Loan Services, LLC*, 2010 U.S. Dist. LEXIS 121252, at *1 (D. Mass. Nov. 16, 2010); *Perry v. Nat'l Default Servicing Corp.*, 2010 U.S. Dist. LEXIS 92907, at *1 (Dist. N.D. Cal. Aug. 20, 2010).  It is the Movant's position that the provisions of the Mortgage grant to MERS the right to assign the Mortgage as "nominee," or agent, on behalf of the lender, First Franklin.  Specifically, Movant relies on the recitations of the Mortgage pursuant to which the "Borrower" acknowledges that MERS holds bare legal title to the Mortgage, but has the right "(A) to exercise any or all those rights, including, but not limited to, the right to foreclose and

---

2

The Judgment of Foreclosure names the Debtor and an individual, Shelly English, as defendants.  Shelly English is the Debtor's daughter-in-law.  At a hearing held on December 13, 2010, the Debtor's counsel stated that he "believed" the Debtor transferred title to the Property to her son, Leroy English, in 2007.  This is consistent with information provided by the Debtor in her petition and schedules.  Leroy English, however, was not named in the foreclosure action.  No one in this case has addressed the issue of whether the proper parties were named in the foreclosure action.  However, absent an argument to the contrary, this Court can only presume that the Judgment of Foreclosure is a binding final judgment by a court of competent jurisdiction.

sell the Property; and (B) to take any action required of Lender including, but not limited to, releasing and canceling [the Mortgage]." In addition, the Movant argues that MERS's status as a "mortgagee" and thus its authority to assign the Mortgage is supported by the New York Real Property Actions and Proceedings Law ("RPAPL") and New York Real Property Law ("RPL"). Movant cites to RPAPL § 1921-a which allows a "mortgagee" to execute and deliver partial releases of lien, and argues that MERS falls within the definition of "mortgagee" which includes the "current holder of the mortgage of record . . . or . . . their . . . agents, successors or assigns." N.Y. Real Prop. Acts. Law § 1921(9)(a) (McKinney 2011). Although the definition of "mortgagee" cited to by the Movant only applies to RPAPL § 1921, Movant argues that it is a "mortgagee" vested with the authority to execute and deliver a loan payoff statement; execute and deliver a discharge of mortgage and assign a mortgage pursuant to RPL §§ 274 and 275.

In addition to its status as "mortgagee," Movant also argues that the assignment is valid because MERS is an "agent" of each of its member banks under the general laws of agency in New York, *see* N.Y. Gen. Oblig. Law § 5-1501(1) (McKinney 2011),[3] and public policy requires the liberal interpretation and judicial recognition of the principal-agent relationship. *See Arens v. Shainswitt*, 37 A.D.2d 274 (N.Y. App. Div. 1971), *aff'd* 29 N.Y.2d 663 (1971). In the instant case, Movant argues, the Mortgage appoints MERS as "nominee," read "agent," for the original

---

[3]     Movant cites to New York General Obligations Law for the proposition that "an agency agreement may take any form 'desired by the parties concerned.'" The direct quote "desired by the parties concerned" seems to be attributed to the General Obligations Law citation, however, the Court could find no such language in the current version of § 5-1501(1). That provision, rather, defines an agent as "a person granted authority to act as attorney-in-fact for the principal *under a power of attorney*, and includes the original agent and any co-agent or successor agent. Unless the context indicates otherwise, an 'agent' designated in a power of attorney shall mean 'attorney-in-fact' for the purposes of this title. An agent acting under a power of attorney has a fiduciary relationship with the principal." N.Y. Gen. Oblig. Law § 5-1501(1) (McKinney 2011) (emphasis added).

lender and the original lender's successors and assigns. As nominee/agent for the lender, *and* as mortgagee of record, Movant argues MERS had the authority to assign the Mortgage to the Movant, U.S. Bank, "in accordance with the principal's instruction to its nominee MERS, to assign the mortgage lien to U.S. Bank . . . ."

Finally, Movant argues that even absent a legally enforceable assignment of the Mortgage, it is entitled to enforce the lien because U.S. Bank holds the Note. The Movant argues that if it can establish that U.S. Bank is the legal holder the Note, the Mortgage by operation of law passes to the Movant because the Note and the Mortgage are deemed to be inseparable. *See In re Conde-Dedonato*, 391 B.R. 247 (Bankr. E.D.N.Y. 2008). The Movant represents, but has not proven, that U.S. Bank is the rightful holder of the Note, and further argues that the assignment of the Note has to this point not been contested in this proceeding.

MERS moved to intervene in this matter pursuant to Fed. R. Bankr. P. 7024 because:

> 12. The Court's determination of the MERS Issue directly affects the business model of MERS. Additionally, approximately 50% of all consumer mortgages in the United States are held in the name of MERS, as the mortgagee of record.
> 13. The Court's determination of the MERS Issue will have a significant impact on MERS as well as the mortgage industry in New York and the United States.
> 14. MERS has a direct financial stake in the outcome of this contested matter, and any determination of the MERS Issue has a direct impact on MERS.

(Motion to Intervene, ¶¶12-14).

Permission to intervene was granted at a hearing held on December 13, 2010.

In addition to adopting the arguments asserted by the Movant, MERS strenuously defends its authority to act as mortgagee pursuant to the procedures for processing this and other mortgages under the MERS "system." First, MERS points out that the Mortgage itself

Case 8:10-cv-77338-reg Doc 41-1 Filed 02/10/11 Entered 02/10/11 14:13:10
Case 1:10-cv-03711-PA Document 30-1 Filed 02/25/11 Page 47 of 74 Page ID#:
356

designates MERS as the "nominee" for the original lender, First Franklin, and its successors and assigns. In addition, the lender designates, and the Debtor agrees to recognize, MERS "as the mortgagee of record and as nominee for 'Lender and Lender's successors and assigns'" and as such the Debtor "expressly agreed without qualification that MERS had the right to foreclose upon the premises as well as exercise any and all rights as nominee for the Lender." (MERS Memorandum of Law at 7). These designations as "nominee," and "mortgagee of record," and the Debtor's recognition thereof, it argues, leads to the conclusion that MERS was authorized as a matter of law to assign the Mortgage to U.S. Bank.

Although MERS believes that the mortgage documents alone provide it with authority to effectuate the assignment at issue, they also urge the Court to broaden its analysis and read the documents in the context of the overall "MERS System." According to MERS, each participating bank/lender agrees to be bound by the terms of a membership agreement pursuant to which the member appoints MERS to act as its authorized agent with authority to, among other things, hold legal title to mortgages and as a result, MERS is empowered to execute assignments of mortgage on behalf of all its member banks. In this particular case, MERS maintains that as a member of MERS and pursuant to the MERS membership agreement, the loan originator in this case, First Franklin, appointed MERS "to act as its agent to hold the Mortgage as nominee on First Franklin's behalf, and on behalf of First Franklin's successors and assigns." MERS explains that subsequent to the mortgage's inception, First Franklin assigned the Note to Aurora Bank FSB f/k/a Lehman Brothers Bank ("Aurora"), another MERS member. According to MERS, note assignments among MERS members are tracked via self-effectuated and self-monitored computer entries into the MERS database. As a MERS member, by

operation of the MERS membership rules, Aurora is deemed to have appointed MERS to act as

its agent to hold the Mortgage as nominee.  Aurora subsequently assigned the Note to U.S. Bank,

also a MERS member.  By operation of the MERS membership agreement, U.S. Bank is deemed

to have appointed MERS to act as its agent to hold the Mortgage as nominee.  Then, according to

MERS, "U.S. Bank, as the holder of the note, under the MERS Membership Rules, chose to

instruct MERS to assign the Mortgage to U.S. Bank prior to commencing the foreclosure

proceedings by U.S. Bank."  (Affirmation of William C. Hultman, ¶12).

MERS argues that the express terms of the mortgage coupled with the provisions of the

MERS membership agreement, is "more than sufficient to create an agency relationship between

MERS and lender and the lender's successors in interest" under New York law and as a result

establish MERS's authority to assign the Mortgage. (MERS Memorandum of Law at 7).

On December 20, 2010, the Debtor filed supplemental opposition to the Motion.  The

Debtor argues that the *Rooker-Feldman* doctrine should not preclude judicial review in this case

because the Debtor's objection to the Motion raises issues that could not have been raised in the

state court foreclosure action, namely the validity of the assignment and standing to lift the stay.

The Debtor also argues that the *Rooker-Feldman* doctrine does not apply because the Judgment

of Foreclosure was entered by default.  Finally, she also argues that the bankruptcy court can

review matters "which are void or fraudulent on its face."  *See In re Ward*, 423 B.R. 22 (Bankr.

E.D.N.Y. 2010).  The Debtor says that she is "alleging questionable, even possibly fraudulent

conduct by MERS in regards to transferring notes and lifting the stay."  (Debtor's Supplemental

Opposition at 3).

The Movant filed supplemental papers on December 23, 2010 arguing that the Motion is

moot because the Property is no longer an asset of the estate as a result of the Chapter 7 Trustee's "report of no distribution," and as such, the Section 362(a) automatic stay was dissolved upon the entry of a discharge on December 14, 2010. *See Brooks v. Bank of New York Mellon*, No. DKC 09-1408, 2009 WL 3379928, at *2 (D. Md. Oct. 16, 2009); *Riggs Nat'l Bank of Washington, D.C. v. Perry*, 729 F.2d 982, 986 (4th Cir. 1984).

The Movant also maintains that *Rooker-Feldman does* apply to default judgments because that doctrine does not require that the prior judgment be a judgment "on the merits." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 n.1 (8th Cir. 1995); *see also Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, No. 04-3659, 2005 WL 3528921, at *2-3 (6th Cir. Dec. 22, 2005); *In re Dahlgren*, No. 09-18982, 2010 WL 5287400, at *1 (D.N.J. Dec. 17, 2010). The Movant points out that the Debtor seems to be confusing the *Rooker-Feldman* doctrine with issue and claim preclusion and that the Debtor has misapplied Chief Judge Craig's ruling in *In re Ward*.

### *Discussion*

As a threshold matter, this Court will address the Movant's argument that this Motion has been mooted by the entry of the discharge order.

### *Effect of the Chapter 7 discharge on the automatic stay*

Section 362(c) provides that:

Except as provided in subsections (d), (e), (f), and (h) of this section--

(1) the stay of an act *against property of the estate* under subsection (a) of this section continues until such property is no longer property of the estate;

Page 12 of 37

(2) the stay of *any other act* under subsection (a) of this section continues until the earliest of--

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, *the time a discharge is granted or denied*;

11 U.S.C. § 362(c) (emphasis added).

Pursuant to Section 362(c)(1), the automatic stay which protects "property of the estate," as opposed to property of the debtor, continues until the property is no longer property of the estate regardless of the entry of the discharge. The provision of the statute relied upon by the Movant for the proposition that the automatic stay terminates upon the entry of a discharge, relates only to the stay of "any other act under subsection(a),", *i.e.*, an act against property that is *not* property of the estate, *i.e.,* is property "of the debtor." The relationship between property of the estate and property of the debtor is succinctly stated as follows:

> Property of the estate consists of all property of the debtor as of the date of the filing of the petition. 11 U.S.C. § 541. It remains property of the estate until it has been exempted by the debtor under § 522, abandoned by the trustee under § 554(a), or sold by the trustee under § 363. If property of the estate is not claimed exempt, sold, or abandoned by the trustee, it is abandoned to the debtor at the time the case is closed if the property was scheduled under § 521(1). If the property is not scheduled by the debtor and is not otherwise administered, it remains property of the estate even after the case has been closed.

> If the property in question is property of the estate, it remains subject to the automatic stay until it becomes property of the debtor and until the earlier of the time the case was closed, the case is dismissed, or a discharge is granted or denied in a chapter 7 case.

*In re Pullman*, 319 B.R. 443, 445 (Bankr. E.D. Va. 2004).

Case 8:10-cv-03711-reg Doc 41-1 Filed 02/10/11 Entered 02/10/11 14:13:10
Case 1:10-cv-03711-PA Document 30-1 Filed 02/25/11 Page 51 of 74 Page ID#:
360

Movant's position seems to be that the Chapter 7 Trustee's filing of a "report of no distribution," otherwise known as a "no asset report," effectuated an abandonment of the real property at issue in this case, and therefore the Property has reverted back to the Debtor. However, Movant fails to cite the relevant statute. Section 554(c) provides that "[u]nless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered *at the time of the closing* of a case is abandoned to the debtor and administered for purposes of section 350 of this title." 11 U.S.C. § 554(c) (emphasis added); Fed. R. Bankr. P. 6007. Cases interpreting Section 554(c) hold that the filing of a report of no distribution does not effectuate an abandonment of estate property. *See, e.g.*, *In re Israel,* 112 B.R. 481, 482 n.3 (Bankr. D. Conn. 1990) ("The filing of a no-asset report does not close a case and therefore does not constitute an abandonment of property of the estate.") (citing *e.g.*, *Zlogar v. Internal Revenue Serv. (In re Zlogar)*, 101 B.R. 1, 3 n.3 (Bankr. N.D. Ill. 1989); *Schwaber v. Reed (In re Reed)*, 89 B.R. 100, 104 (Bankr. C.D. Cal. 1988); 11 U.S.C. § 554(c)).

Because the real property at issue in this case has not been abandoned it remains property of the estate subject to Section 362(a) unless and until relief is granted under Section 362(d).

*Rooker-Feldman and res judicata*[4]

The Movant argues that U.S. Bank's status as a secured creditor, which is the basis for its standing in this case, already has been determined by the state court and that determination cannot be revisited here. The Movant relies on both the *Rooker-Feldman* doctrine and *res*

---

[4]     Because the Debtor's objection is overruled under *Rooker-Feldman* and *res judicata*, the Court will not address the merits of the Movant's judicial estoppel arguments.

*judicata* principles to support this position.

The *Rooker-Feldman* doctrine is derived from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), which together stand for the proposition that lower federal courts lack subject matter jurisdiction to sit in direct appellate review of state court judgments. The *Rooker-Feldman* doctrine is a narrow jurisdictional doctrine which is distinct from federal preclusion doctrines. *See McKithen v. Brown*, 481 F.3d 89, 96-97 (2d Cir. 2007) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), and *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). In essence, the doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Exxon Mobil*, 544 U.S. at 283.

The Second Circuit has delineated four elements that must be satisfied in order for *Rooker-Feldman* to apply:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain [ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment [ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"-i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

*McKithen*, 481 F.3d at 97 (internal citation omitted and alteration in original) (quoting *Hoblock*,

Case 8:10-cv-03711-reg Doc 41-1 Filed 02/10/11 Entered 02/10/11 14:13:10
Case 1:10-cv-03711-PA Document 30-1 Filed 02/25/11 Page 53 of 74 Page ID#:
362

422 F.3d at 85).

In a case with facts similar to the instant case, Chief Judge Craig applied the *Rooker-Feldman* doctrine to overrule a debtor's objection to a motion for relief from the automatic stay. *See In re Ward*, 423 B.R. 22 (Bankr. E.D.N.Y. 2010). In *In re Ward*, a foreclosure sale was conducted prior to the filing of the bankruptcy petition. When the successful purchaser sought relief from stay in the bankruptcy case to proceed to evict the debtor, the debtor opposed the motion. The debtor argued that the foreclosure judgment was flawed because "no original note was produced", "the mortgage was rescinded", "the plaintiff in the action doesn't exist" or "was not a proper party to the foreclosure action", and that "everything was done irregularly and underneath [the] table." *In re Ward*, 423 B.R. at 27. Chief Judge Craig overruled the debtor's opposition and found that each of the elements of the *Rooker-Feldman* doctrine were satisfied:

> The *Rooker-Feldman* doctrine applies in this case because the Debtor lost in the state court foreclosure action, the Foreclosure Judgment was rendered before the Debtor commenced this case, and the Debtor seeks this Court's review of the Foreclosure Judgment in the context of her opposition to the Purchaser's motion for relief from the automatic stay. The injury complained of, *i.e.*, the foreclosure sale to the Purchaser, was "caused by" the Foreclosure Judgment because "the foreclosure [sale] would not have occurred but-for" the Foreclosure Judgment. Accordingly, the *Rooker-Feldman* doctrine does not permit this Court to disregard the Foreclosure Judgment.

*In re Ward*, 423 B.R. at 28 (citations omitted and alteration in original).

In the instant case, the Debtor argues that the *Rooker-Feldman* doctrine does not apply because the Judgment of Foreclosure was entered on default, not on the merits. She also argues that *Rooker-Feldman* should not apply because she is alleging that the Judgment of Foreclosure was procured by fraud in that the MERS system of mortgage assignments was fraudulent in nature or void. However, this Court is not aware of any exception to the *Rooker-Feldman*

doctrine for default judgments, or judgments procured by fraud and the Court will not read those exceptions into the rule. *See Salem v. Paroli*, 260 B.R. 246, 254 (S.D.N.Y. 2001) (applying *Rooker-Feldman* to preclude review of state court default judgment); *see also Lombard v. Lombard*, No. 00-CIV-6703 (SAS), 2001 WL 548725, at *3-4 (S.D.N.Y. May 23, 2001) (applying *Rooker-Feldman* to preclude review of stipulation of settlement executed in connection with state court proceeding even though applicant argued that the stipulation should be declared null and void because he was under duress at the time it was executed).

The Debtor also argues that *Rooker-Feldman* does not apply in this case because she is not asking this Court to set aside the Judgment of Foreclosure, but rather is asking this Court to make a determination as to the Movant's standing to seek relief from stay. The Debtor argues that notwithstanding the *Rooker-Feldman* doctrine, the bankruptcy court must have the ability to determine the standing of the parties before it.

Although the Debtor says she is not seeking affirmative relief from this Court, the net effect of upholding the Debtor's jurisdictional objection in this case would be to deny U.S. Bank rights that were lawfully granted to U.S. Bank by the state court. This would be tantamount to a reversal which is prohibited by *Rooker-Feldman*.

Even if *Rooker-Feldman* were found not to apply to this determination, the Court still would find that the Debtor is precluded from questioning U.S. Bank's standing as a secured creditor under the doctrine of *res judicata*. The state court already has determined that U.S. Bank is a secured creditor with standing to foreclose and this Court cannot alter that determination in order to deny U.S. Bank standing to seek relief from the automatic stay.

The doctrine of *res judicata* is grounded in the Full Faith and Credit Clause of the United

States Constitution.  U.S. Const. art. IV, § 1.  It prevents a party from re-litigating any issue *or defense* that was decided by a court of competent jurisdiction and which could have been raised or decided in the prior action.  *See Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (applying New York preclusion rules); *Swiatkowski v. Citibank*, No. 10-CV-114, 2010 WL 3951212, at *14 (E.D.N.Y. Oct. 7, 2010) (citing *Waldman v. Vill. of Kiryas Joel*, 39 F.Supp.2d 370, 377 (S.D.N.Y. 1999)).  *Res judicata* applies to judgments that were obtained by default, *see Kelleran v. Andrijevic*, 825 F.2d 692, 694-95 (2d Cir. 1987), but it may not apply if the judgment was obtained by *extrinsic* fraud or collusion.  "Extrinsic fraud involves the parties' 'opportunity to have a full and fair hearing,' while intrinsic fraud, on the other hand, involves the 'underlying issue in the original lawsuit.'"  *In re Ward*, 423 B.R. at 29.  The Debtor's assertions that the MERS system of assignments may have been fraudulent is more appropriately deemed an *intrinsic* fraud argument.  The Debtor has not alleged any *extrinsic* fraud in the procurement of the Judgment of Foreclosure which prevented a full and fair hearing before the state court.

As a result, the Court finds that the Judgment of Foreclosure alone is sufficient evidence of the Movant's status as a secured creditor and therefore its standing to seek relief from the automatic stay.  On that basis, and because the Movant has established grounds for relief from stay under Section 362(d), the Motion will be granted.


***MERS***

Because of the broad applicability of the issues raised in this case the Court believes that it is appropriate to set forth its analysis on the issue of whether the Movant, absent the Judgment of Foreclosure, would have standing to bring the instant motion.  Specifically MERS's role in

Page 18 of  37

the ownership and transfer of real property notes and mortgages is at issue in dozens of cases before this Court. As a result, the Court has deferred ruling on motions for relief from stay where the movants' standing may be affected by MERS's participation in the transfer of the real property notes and mortgages. In the instant case, the issues were resolved under the *Rooker-Feldman* doctrine and the application of *res judicata*. Most, if not all, of the remainder of the "MERS cases" before the Court cannot be resolved on the same basis. For that reason, and because MERS has intervened in this proceeding arguing that the validity of MERS assignments directly affects its business model and will have a significant impact on the national mortgage industry, this Court will give a reasoned opinion as to the Movant's standing to seek relief from the stay and how that standing is affected by the fact that U.S. Bank acquired its rights in the Mortgage by way of assignment from MERS.

### *Standing to seek relief from the automatic stay*

The Debtor has challenged the Movant's standing to seek relief from the automatic stay. Standing is a threshold issue for a court to resolve. Section 362(d) states that relief from stay may be granted "[o]n request of a party in interest and after notice and a hearing." 11 U.S.C. § 362(d). The term "party in interest" is not defined in the Bankruptcy Code, however the Court of Appeals for the Second Circuit has stated that "[g]enerally the 'real party in interest' is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." *See Roslyn Savings Bank v. Comcoach (In re Comcoach)*, 698 F.2d 571, 573 (2d Cir. 1983). The legislative history of Section 362 "suggests that, notwithstanding the use of the term 'party in interest', it is only creditors who may obtain relief

Case 8:10-cv-77338-reg   Doc 41-1   Filed 02/10/11   Entered 02/10/11 14:13:10
Case 1:10-cv-03711-PA   Document 30-1   Filed 02/25/11   Page 57 of 74   Page ID#:
366

from the automatic stay." *Id.* at 573-74. (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 175,

reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 6136); *see also Greg Restaurant Equip.*

*And Supplies v. Toar Train P'ship (In re Toar Train P'ship)*, 15 B.R. 401, 402 (Bankr. D.

Vt.1981) (finding that a judgment creditor of the debtor was not a "party in interest" because the

judgment creditor was not itself a direct creditor of the bankrupt).

      Using the standard established by the Second Circuit, this Court must determine whether

the Movant is the "one who, under applicable substantive law, has the legal right" to enforce the

subject Note and Mortgage, and is therefore a "creditor" of this Debtor.  *See In re Toar*, 15 B.R.

at 402; *see also In re Mims*, 438 B.R. 52, 55 (Bankr. S.D.N.Y. 2010).  The Bankruptcy Code

defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or

before the order for relief . . . ."  11 U.S.C. § 101(10).  "Claim" is defined as the "right to

payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,

contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . .

."  11 U.S.C. § 101(5)(A).  In the context of a lift stay motion where the movant is seeking to

commence or continue with an action to foreclose a mortgage against real property, the movant

must show that it is a "party in interest" by showing that it is a creditor with a security interest in

the subject real property.  *See Mims*, 438 B.R. at 57 (finding that as movant "failed to prove it

owns the Note, it has failed to establish that it has standing to pursue its state law remedies with

regard to the Mortgage and Property").  *Cf. Brown Bark I L.P. v. Ebersole (In re Ebersole)*, 440

B.R. 690, 694 (Bankr. W.D. Va. 2010) (finding that movant seeking relief from stay must prove

that it is the holder of the subject note in order to establish a 'colorable claim' which would

establish standing to seek relief from stay).

*Noteholder status*

In the Motion, the Movant asserts U.S. Bank's status as the "holder" of the Mortgage. However, in order to have standing to seek relief from stay, Movant, which acts as the representative of U.S. Bank, must show that U.S. Bank holds both the Mortgage and the Note. *Mims*, 438 B.R. at 56. Although the Motion does not explicitly state that U.S. Bank is the holder of the Note, it is implicit in the Motion and the arguments presented by the Movant at the hearing. However, the record demonstrates that the Movant has produced no evidence, documentary or otherwise, that U.S. Bank is the rightful holder of the Note. Movant's reliance on the fact that U.S. Bank's noteholder status has not been challenged thus far does not alter or diminish the Movant's burden to show that it is the holder of the Note as well as the Mortgage.

Under New York law, Movant can prove that U.S. Bank is the holder of the Note by providing the Court with proof of a written assignment of the Note, or by demonstrating that U.S. Bank has physical possession of the Note endorsed over to it. *See, eg.*, *LaSalle Bank N.A. v. Lamy*, 824 N.Y.S.2d 769, 2006 WL 2251721, at *1 (N.Y. Sup. Ct. Aug. 7, 2006). The only written assignment presented to the Court is not an assignment of the Note but rather an "Assignment of Mortgage" which contains a vague reference to the Note. Tagged to the end of the provisions which purport to assign the Mortgage, there is language in the Assignment stating "To Have and to Hold the said Mortgage *and Note*, and also the said property until the said Assignee forever, subject to the terms contained in said Mortgage *and Note*." (Assignment of Mortgage (emphasis added)). Not only is the language vague and insufficient to prove an intent to assign the Note, but MERS is not a party to the Note and the record is barren of any representation that MERS, the purported assignee, had any authority to take any action with

Page 21 of  37

respect to the Note. Therefore, the Court finds that the Assignment of Mortgage is not sufficient to establish an effective assignment of the Note.

By MERS's own account, it took no part in the assignment of the Note in this case, but merely provided a database which allowed its members to electronically self-report transfers of the Note. MERS does not confirm that the Note was properly transferred or in fact whether anyone including agents of MERS had or have physical possession of the Note. What remains undisputed is that MERS did not have any rights with respect to the Note and other than as described above, MERS played no role in the transfer of the Note.

Absent a showing of a valid assignment of the Note, Movant can demonstrate that U.S. Bank is the holder of the Note if it can show that U.S. Bank has physical possession of the Note endorsed to its name. *See In re Mims*, 423 B.R. at 56-57. According to the evidence presented in this matter the manner in which the MERS system is structured provides that, "[w]hen the beneficial interest in a loan is sold, the promissory note is [] transferred by an endorsement and delivery from the buyer to the seller [sic], but MERS Members are obligated to update the MERS® System to reflect the change in ownership of the promissory note. . . ." (MERS Supplemental Memorandum of Law at 6). However, there is nothing in the record to prove that the Note in this case was transferred according to the processes described above other than MERS's representation that its computer database reflects that the Note was transferred to U.S. Bank. The Court has no evidentiary basis to find that the Note was endorsed to U.S. Bank or that U.S. Bank has physical possession of the Note. Therefore, the Court finds that Movant has not satisfied its burden of showing that U.S. Bank, the party on whose behalf Movant seeks relief from stay, is the holder of the Note.

*Mortgagee status*

The Movant's failure to show that U.S. Bank holds the Note should be fatal to the Movant's standing.  However, even if the Movant could show that U.S. Bank is the holder of the Note, it still would have to establish that it holds the Mortgage in order to prove that it is a secured creditor with standing to bring this Motion before this Court.  The Movant urges the Court to adhere to the adage that a mortgage necessarily follows the same path as the note for which it stands as collateral.  *See Wells Fargo Bank, N.A. v. Perry*, 875 N.Y.S.2d 853, 856 (N.Y. Sup. Ct. 2009).  In simple terms the Movant relies on the argument that a note and mortgage are inseparable.  *See Carpenter v. Longan*, 83 U.S. 271, 274 (1872).  While it is generally true that a mortgage travels a parallel path with its corresponding debt obligation, the parties in this case have adopted a process which by its very terms alters this practice where mortgages are held by MERS as "mortgagee of record."  By MERS's own account, the Note in this case was transferred among its members, while the Mortgage remained in MERS's name.  MERS admits that the very  foundation of its business model as described herein requires that the Note and Mortgage travel on divergent paths.  Because the Note and Mortgage did not travel together, Movant must prove not only that it is acting on behalf of a valid assignee of the Note, but also that it is acting on behalf of the valid assignee of the Mortgage.[5]

---

[5]    MERS argues that notes and mortgages processed through the MERS System are never "separated" because beneficial ownership of the notes and mortgages are always held by the same entity.  The Court will not address that issue in this Decision, but leaves open the issue as to whether  mortgages  processed through the MERS system are properly perfected and valid liens.  *See Carpenter v. Longan*, 83 U.S. at 274 (finding that an assignment of the mortgage without the note is a nullity); *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 166-67 (Kan. 2009) ("[I]n the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable").

MERS asserts that its right to assign the Mortgage to U.S. Bank in this case, and in what it estimates to be literally millions of other cases, stems from three sources: the Mortgage documents; the MERS membership agreement; and state law.  In order to provide some context to this discussion, the Court will begin its analysis with an overview of mortgage and loan processing within the MERS network of lenders as set forth in the record of this case.

 In the most common residential lending scenario, there are two parties to a real property mortgage – a mortgagee, *i.e.*, a lender, and a mortgagor, *i.e.*, a borrower.  With some nuances and allowances for the needs of modern finance this model has been followed for hundreds of years.  The MERS business plan, as envisioned and implemented by lenders and others involved in what has become known as the mortgage finance industry, is based in large part on amending this traditional model and introducing a third party into the equation.  MERS is, in fact, neither a borrower nor a lender, but rather purports to be both "mortgagee of record" and a "nominee" for the mortgagee.  MERS was created to alleviate problems created by, what was determined by the financial community to be, slow and burdensome recording processes adopted by virtually every state and locality.  In effect the MERS system was designed to circumvent these procedures. MERS, as envisioned by its originators, operates as a replacement for our traditional system of public recordation of mortgages.

Caselaw and commentary addressing MERS's role in the mortgage recording and foreclosure process abound.  *See* Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359 (2010).  In a 2006 published opinion, the New York Court of Appeals described MERS system as follows:

> In 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages.

Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system.

The initial MERS mortgage is recorded in the County Clerk's office with 'Mortgage Electronic Registration Systems, Inc.' named as the lender's nominee or mortgagee of record on the instrument. During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS's private system. In the MERS system, the mortgagor is notified of transfers of servicing rights pursuant to the Truth in Lending Act, but not necessarily of assignments of the beneficial interest in the mortgage.

*Merscorp, Inc., v. Romaine*, 8 N.Y.3d 90 (N.Y. 2006) (footnotes omitted).

In the words of MERS's legal counsel, "[t]he essence of MERS' business is to hold legal title to beneficial interests under mortgages and deeds of trust in the land records. The MERS® System is designed to allow its members, which include originators, lenders, servicers, and investors, to accurately and efficiently track transfers of servicing rights and beneficial ownership." (MERS Memorandum of Law at 5). The MERS® System ". . . eliminate[s] the need for frequent, recorded assignments of subsequent transfers." (MERS Supplemental Memorandum of Law at 4). "Prior to MERS, every time a loan secured by a mortgage was sold, the assignee would need to record the assignment to protect the security interest. If a servicing company serviced the loan and the servicing rights were sold, – an event that could occur multiple times during the life of a single mortgage loan – multiple assignments were recorded to ensure that the proper servicer appeared in the land records in the County Clerk's office." (MERS Supplemental Memorandum of Law at 4-5).

"When the beneficial interest in a loan is sold, the promissory note is still transferred by

an endorsement and delivery from the buyer to the seller, but MERS Members are obligated to update the MERS® System to reflect the change in ownership of the promissory note. . . . So long as the sale of the note involves a MERS Member, MERS remains the named mortgagee of record, and continues to act as the mortgagee, as the nominee for the new beneficial owner of the note (and MERS' Member). The seller of the note does not and need not assign the mortgage because under the terms of that security instrument, MERS remains the holder of title to the mortgage, that is, the mortgagee, as the nominee for the purchaser of the note, who is then the lender's successor and/or assign." (MERS Supplemental Memorandum of Law at 6). "At all times during this process, the original mortgage or an assignment of the mortgage to MERS remains of record in the public land records where the security real estate is located, providing notice of MERS's disclosed role as the agent for the MERS Member lender and the lender's successors and assigns." (Declaration of William C. Hultman, ¶9).

MERS asserts that it has authority to act as agent for each and every MERS member which claims ownership of a note and mortgage registered in its system. This authority is based not in the statutes or caselaw, but rather derives from the terms and conditions of a MERS membership agreement. Those terms and conditions provide that "MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time." (Declaration of William C. Hultman, ¶5). MERS "holds the legal title to the mortgage and acts as the agent or nominee for the MERS Member lender, or owner of the mortgage loan." (Declaration of William C. Hultman, ¶6). According to MERS, it is the "intent of the parties . . . for MERS to serve as the *common nominee or agent* for MERS Member lenders and their

successors and assigns." (MERS Supplemental Memorandum of Law at 19) (emphasis added by the Court). "Because MERS holds the mortgage lien for the lender who may freely transfer its interest in the note, without the need for a recorded assignment document in the land records, MERS holds the mortgage lien for *any intended transferee of the note*." (MERS Supplemental Memorandum of Law at 15) (emphasis added by the Court). If a MERS member subsequently assigns the note to a non-MERS member, or if the MERS member which holds the note decides to foreclose, only then is an assignment of the mortgage from MERS to the noteholder documented and recorded in the public land records where the property is located. (Declaration of William C. Hultman, ¶12).

Before commenting on the legal effect of the MERS membership rules or the alleged "common agency" agreement created among MERS members, the Court will review the relevant portions of the documents presented in this case to evaluate whether the documentation, on its face, is sufficient to prove a valid assignment of the Mortgage to U.S. Bank.

### The Mortgage

First Franklin is the "Lender" named in the Mortgage. With reference to MERS's role in the transaction, the Mortgage states:

> MERS is a separate corporation that is *acting solely as a nominee for Lender and Lender's successors and assigns*. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679 MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE *MORTGAGEE OF RECORD*.**

(Mortgage at 1 (emphasis added by the Court)).

The Mortgage also purports to contain a transfer to MERS of the Borrower's (*i.e.*, the

Debtor's) rights in the subject Property as follows:

### BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

[The Borrower] mortgage[s], grant[s] and convey[s] the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, [the Borrower is] giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgage on real property. [The Borrower is] giving Lender these rights to protect Lender from possible losses that might result if [the Borrower] fail[s] to [comply with certain obligations under the Security Instrument and accompanying Note.]

[The Borrower] understand[s] and agree[s] that MERS holds only legal title to the rights granted by [the Borrower] in this Security Instrument, but, if necessary to comply with law or custom, *MERS (as nominee for Lender and Lenders's successors and assigns) has the right: (A) to exercise any or all those rights, including, but not limited to, the right to foreclose and sell the Property; and (B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.*

[The Borrower gives] MERS (solely as nominee for Lender and Lender's successors in interest), rights in the Property . . .

(Mortgage at 3) (emphasis added).

The Assignment of Mortgage references the Mortgage and defines the "Assignor" as

"'Mers' Mortgage Electronic Registration Systems, Inc., 2150 North First Street, San Jose,

California 95131, *as nominee for First Franklin*, a division of National City Bank of IN, 2150

North First Street San Jose, California 95153." (Emphasis added by the Court). The "Assignee"

is U.S. Bank.

Premised on the foregoing documentation, MERS argues that it had full authority to

validly execute the Assignment of Mortgage to U.S. Bank on February 1, 2008, and that as of the

date the foreclosure proceeding was commenced U.S. Bank held both the Note and the

Mortgage. However, without more, this Court finds that MERS's "nominee" status and the

rights bestowed upon MERS within the Mortgage itself, are insufficient to empower MERS to effectuate a valid assignment of mortgage.

There are several published New York state trial level decisions holding that the status of "nominee" or "mortgagee of record" bestowed upon MERS in the mortgage documents, by itself, does not empower MERS to effectuate an assignment of the mortgage. These cases hold that MERS may not validly assign a mortgage based on its nominee status, absent some evidence of specific authority to assign the mortgage. *See Bank of New York v. Mulligan,* No. 29399/07, 2010 WL 3339452, at *7 (N.Y. Sup. Ct. Aug. 25, 2010); *One West Bank, F.S.B. v. Drayton*, 910 N.Y.S.2d 857, 871 (N.Y. Sup. Ct. 2010); *Bank of New York v. Alderazi*, 900 N.Y.S.2d 821, 824 (N.Y. Sup. Ct. 2010) (the "party who claims to be the agent of another bears the burden of proving the agency relationship by a preponderance of the evidence"); *HSBC Bank USA v. Yeasmin*, No. 34142/07, 2010 WL 2089273, at *3 (N.Y. Sup. Ct. May 24, 2010); *HSBC Bank USA v. Vasquez,* No. 37410/07, 2009 WL 2581672, at *3 (N.Y. Sup. Ct. Aug. 21, 2010); *LaSalle Bank N.A. v. Lamy*, 824 N.Y.S.2d 769, 2006 WL 2251721, at *2 (N.Y. Sup. Ct. Aug. 7, 2006) ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee."). *See also MERS v. Saunders*, 2 A.3d 289, 295 (Me. 2010) ("MERS's only right is to record the mortgage. Its designation as the 'mortgagee of record' in the document does not change or expand that right..."). *But see US Bank, N.A. v. Flynn*, 897 N.Y.S.2d 855 (N.Y. Sup. Ct. 2010) (finding that MERS's "nominee" status and the mortgage documents give MERS authority to assign); *Crum v. LaSalle Bank, N.A.*, No. 2080110, 2009 WL 2986655, at *3 (Ala. Civ. App., Sept. 18, 2009) (finding MERS validly assigned its and the lender's rights to

Case 8:10-cv-77338-reg   Doc 41-1   Filed 02/10/11   Entered 02/10/11 14:13:10
Case 1:10-cv-03711-PA   Document 30-1   Filed 02/25/11   Page 67 of 74   Page ID#:
376

assignee); *Blau v. America's Servicing Company, et al.*, No. CV-08-773-PHX-MHM, 2009 WL 3174823, at *8 (D. Ariz. Sept. 29, 2009) (finding that assignee of MERS had standing to foreclose).

In *LaSalle Bank, N.A. v. Bouloute,* No. 41583/07, 2010 WL 3359552, at *2 (N.Y. Sup. Aug. 26, 2010), the court analyzed the relationship between MERS and the original lender and concluded that a nominee possesses few or no legally enforceable rights beyond those of a principal whom the nominee serves. The court stated:

> MERS . . . recorded the subject mortgage as "nominee" for FFFC. The word "nominee" is defined as "[a] person designated to act in place of another, usu. in a very limited way" or "[a] party who holds bare legal title for the benefit of others." (Black's Law Dictionary 1076 [8th ed 2004] ). "This definition suggests that a nominee possesses few or no legally enforceable rights beyond those of a principal whom the nominee serves." (*Landmark National Bank v. Kesler*, 289 Kan 528, 538 [2009] ). The Supreme Court of Kansas, in *Landmark National Bank*, 289 Kan at 539, observed that:
>
> > The legal status of a nominee, then, depends on the context of the relationship of the nominee to its principal. Various courts have interpreted the relationship of MERS and the lender as an agency relationship. See *In re Sheridan*, 2009 WL631355, at *4 (Bankr. D. Idaho, March 12, 2009) (MERS "acts not on its own account. Its capacity is representative."); *Mortgage Elec. Registrations Systems, Inc. v. Southwest*, 2009 Ark. 152 ----, 301 SW3d 1, 2009 WL 723182 (March 19, 2009) ("MERS, by the terms of the deed of trust, and its own stated purposes, was the lender's agent"); *La Salle Nat. Bank v. Lamy*, 12 Misc.3d 1191[A], at *2 [Sup Ct, Suffolk County 2006] ) ... ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee.").

*LaSalle Bank, N.A. v. Bouloute,* No. 41583/07, 2010 WL 3359552, at *2; *see also Bank of New York v. Alderazi*, 900 N.Y.S.2d 821, 823 (N.Y. Sup. Ct. 2010) (nominee is "'[a] person designated to act in place of another, usually in a very limited way.'") (quoting Black's Law

Dictionary)).

In *LaSalle Bank, N.A. v. Bouloute* the court concluded that MERS must have some evidence of authority to assign the mortgage in order for an assignment of a mortgage by MERS to be effective. Evidence of MERS's authority to assign could be by way of a power of attorney or some other document executed by the original lender. *See Bouloute*, 2010 WL 3359552, at *1; *Alderazi*, 900 N.Y.S.2d at 823 ("'To have a proper assignment of a mortgage by an authorized agent, a power of attorney is necessary to demonstrate how the agent is vested with the authority to assign the mortgage.'") (quoting *HSBC Bank USA, NA v. Yeasmin*, 866 N.Y.S.2d 92 (N.Y. Sup. Ct. 2008)).

Other than naming MERS as "nominee", the Mortgage also provides that the Borrower transfers legal title to the subject property to MERS, as the Lender's nominee, and acknowledges MERS's rights to exercise certain of the Lender's rights under state law. This too, is insufficient to bestow any authority upon MERS to assign the mortgage. In *Bank of New York v. Alderazi*, the court found "[t]he fact that the borrower acknowledged and consented to MERS acting as nominee of the lender has no bearing on what specific powers and authority the lender granted MERS." *Alderazi*, 900 N.Y.S.2d at 824. Even if it did bestow some authority upon MERS, the court in *Alderazi* found that the mortgage did not convey the specific right to assign the mortgage.

The Court agrees with the reasoning and the analysis in *Bouloute* and *Alderazi*, and the other cases cited herein and finds that the Mortgage, by naming MERS a "nominee," and/or "mortgagee of record" did not bestow authority upon MERS to assign the Mortgage.

Page 31 of 37

### *The MERS membership rules*

According to MERS, in addition to the alleged authority granted to it in the Mortgage itself, the documentation of the Assignment of Mortgage comports with all the legal requirements of agency when read in conjunction with the overall MERS System. MERS's argument requires that this Court disregard the specific words of the Assignment of Mortgage or, at the very least, interpret the Assignment in light of the overall MERS System of tracking the beneficial interests in mortgage securities. MERS urges the Court to look beyond the four corners of the Mortgage and take into consideration the agency relationship created by the agreements entered into by the lenders participating in the MERS System, including their agreement to be bound by the terms and conditions of membership.

MERS has asserted that each of its member/lenders agrees to appoint MERS to act as its agent. In this particular case, the Treasurer of MERS, William C. Hultman, declared under penalty of perjury that "pursuant to the MERS's Rules of Membership, Rule 2, Section 5. . . First Franklin appointed MERS to act as its agent to hold the Mortgage as nominee on First Franklin's behalf, and on behalf of First Franklin's successors and assigns." (Affirmation of William C. Hultman, ¶7). However, Section 5 of Rule 2, which was attached to the Hultman Affirmation as an exhibit, contains no explicit reference to the creation of an agency or nominee relationship. Consistent with this failure to explicitly refer to the creation of an agency agreement, the rules of membership do not grant any clear authority to MERS to take any action with respect to the mortgages held by MERS members, including but not limited to executing assignments. The rules of membership do require that MERS members name MERS as "mortgagee of record" and that MERS appears in the public land records as such. Section 6 of Rule 2 states that "MERS

Case 8:10-cv-77338-reg   Doc 41-1   Filed 02/10/11   Entered 02/10/11 14:13:10
Case 1:10-cv-03111-PA   Document 30-1   Filed 02/25/11   Page 70 of 74   Page ID#:
379

shall at all times comply with the instructions of the holder of mortgage loan promissory notes,"

but this does not confer any specific power or authority to MERS.


### State law

Under New York agency laws, an agency relationship can be created by a "manifestation

of consent by one person to another that the other shall act on his behalf and subject to his

control, and the consent by the other to act."  *Meisel v. Grunberg*, 651 F.Supp.2d 98, 110

(S.D.N.Y. 2009) (citing *N.Y. Marine & Gen. Ins. Co. v. Tradeline, L.L.C.*, 266 F.3d 112, 122 (2d

Cir.2001)).

> 'Such authority to act for a principal may be actual or apparent.' . . . Actual
> authority arises from a direct manifestation of consent from the principal to the
> agent. . . . . The existence of actual authority 'depends upon the actual interaction
> between the putative principal and agent, not on any perception a third party may
> have of the relationship.'

*Meisel v. Grunberg*, 651 F.Supp.2d at 110 (citations omitted).

Because MERS's members, the beneficial noteholders, purported to bestow upon MERS

interests in real property sufficient to authorize the assignments of mortgage, the alleged agency

relationship must be committed to writing by application of the statute of frauds.  Section 5-

703(2) of the New York General Obligations Law states that:

> An estate or interest in real property, other than a lease for a term not exceeding
> one year, or any trust or power, over or concerning real property, or in any
> manner relating thereto, cannot be created, granted, assigned, surrendered or
> declared, unless by act or operation of law, or by a deed or conveyance in writing,
> subscribed by the person creating, granting, assigning, surrendering or declaring
> the same, *or by his lawful agent, thereunto authorized by writing*.

*See* N.Y. Gen. Oblig. Law § 5-703(1) (McKinney 2011); *Republic of Benin v. Mezei*, No. 06 Civ.

870 (JGK), 2010 WL 3564270, at *3 (S.D.N.Y. Sept. 9, 2010); *Urgo v. Patel*, 746 N.Y.S.2d 733

(N.Y. App. Div. 2002) (finding that unwritten apparent authority is insufficient to satisfy the statute of frauds) (citing *Diocese of Buffalo v. McCarthy*, 91 A.D.2d 1210 (4th Dept. 1983)); *see also* N.Y. Gen. Obl. Law § 5-1501 (McKinney 2011) ("'agent' means a person granted authority to act as attorney-in-fact for the principal under a power of attorney. . .").  MERS asks this Court to liberally interpret the laws of agency and find that an agency agreement may take any form "desired by the parties concerned."   However, this does not free MERS from the constraints of applicable agency laws.

The Court finds that the record of this case is insufficient to prove that an agency relationship exists under the laws of the state of New York between MERS and its members. According to MERS, the principal/agent relationship among itself and its members is created by the MERS rules of membership and terms and conditions, as well as the Mortgage itself. However, none of the documents expressly creates an agency relationship or even mentions the word "agency."  MERS would have this Court cobble together the documents and draw inferences from the words contained in those documents.  For example, MERS argues that its agent status can be found in the Mortgage which states that MERS is a "nominee" and a "mortgagee of record."  However, the fact that MERS is named "nominee" in the Mortgage is not dispositive of the existence of an agency relationship and does not, in and of itself, give MERS any "authority to act." *See Steinbeck v. Steinbeck Heritage Foundation*, No. 09-18360cv, 2010 WL 3995982, at *2 (2d Cir. Oct. 13, 2010) (finding that use of the words "attorney in fact" in documents can constitute evidence of agency but finding that such labels are not dispositive); *MERS v. Saunders*, 2 A.3d 289, 295 (Me. 2010) (designation as the 'mortgagee of record' does not qualify MERS as a "mortgagee").  MERS also relies on its rules of membership as evidence

of the agency relationship. However, the rules lack any specific mention of an agency relationship, and do not bestow upon MERS any authority to act. Rather, the rules are ambiguous as to MERS's authority to take affirmative actions with respect to mortgages registered on its system.

In addition to casting itself as nominee/agent, MERS seems to argue that its role as "mortgagee of record" gives it the rights of a mortgagee in its own right. MERS relies on the definition of "mortgagee" in the New York Real Property Actions and Proceedings Law Section 1921 which states that a "mortgagee" *when used in the context of Section 1921*, means the "current holder of the mortgage of record . . . or their agents, successors or assigns." N.Y. Real Prop. Acts. L. § 1921 (McKinney 2011). The provisions of Section 1921 relate solely to the discharge of mortgages and the Court will not apply that definition beyond the provisions of that section in order to find that MERS is a "mortgagee" with full authority to perform the duties of mortgagee in its own right. Aside from the inappropriate reliance upon the statutory definition of "mortgagee," MERS's position that it can be both the mortgagee and an agent of the mortgagee is absurd, at best.

Adding to this absurdity, it is notable in this case that the Assignment of Mortgage was by MERS, *as nominee for First Franklin*, the original lender. By the Movant's and MERS's own admission, at the time the assignment was effectuated, First Franklin no longer held any interest in the Note. Both the Movant and MERS have represented to the Court that subsequent to the origination of the loan, the Note was assigned, through the MERS tracking system, from First Franklin to Aurora, and then from Aurora to U.S. Bank. Accordingly, at the time that MERS, *as nominee of First Franklin*, assigned the interest in the Mortgage to U.S. Bank, U.S.

Page 35 of 37

Bank allegedly already held the Note and it was at U.S. Bank's direction, not First Franklin's, that the Mortgage was assigned to U.S. Bank.  Said another way, when MERS assigned the Mortgage to U.S. Bank on First Franklin's behalf, it took its direction from U.S. Bank, not First Franklin, to provide documentation of an assignment from an entity that no longer had any rights to the Note or the Mortgage.  The documentation provided to the Court in this case (and the Court has no reason to believe that any further documentation exists), is stunningly *inconsistent* with what the parties define as the facts of this case.

However, even if MERS had assigned the Mortgage acting on behalf of the entity which held the Note at the time of the assignment, this Court finds that MERS did not have authority, as "nominee" or agent, to assign the Mortgage absent a showing that it was given specific written directions by its principal.

This Court finds that MERS's theory that it can act as a "common agent" for undisclosed principals is not supported by the law.  The relationship between MERS and its lenders and its distortion of its alleged "nominee" status was appropriately described by the Supreme Court of Kansas as follows: "The parties appear to have defined the word [nominee] in much the same way that the blind men of Indian legend described an elephant – their description depended on which part they were touching at any given time."  *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 166-67 (Kan. 2010).

### *Conclusion*

For all of the foregoing reasons, the Court finds that the Motion in this case should be granted.  However, in all future cases which involve MERS, the moving party must show that it

validly holds both the mortgage and the underlying note in order to prove standing before this

Court.


Dated: Central Islip, New York
      February 10, 2011                            ***/s/ Robert E. Grossman***
                                               Hon. Robert E. Grossman
                                               United States Bankruptcy Judge